635 So.2d 255 (1994)
William S. BROWN, Plaintiff-Appellee,
v.
W.C. BROWN, Defendant-Appellant.
D.E. BROWN, Jr., Plaintiff-Appellee,
v.
ESTATE OF James Roy BROWN, et al., Defendant-Appellant.
W.C. BROWN, et al., Plaintiff-Appellant,
v.
D.E. BROWN, et al., Defendant-Appellee.
Nos. 93-1105, 93-1106 and 93-1107.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
Rehearing Denied May 19, 1994.
*256 Harry James Lossin Sr., Louis L. Vogt, Jonesville, for William S. Brown.
Christopher J. Roy, Alexandria, for W.C. Brown.
Hal James Scott, Jonesville, for Estate of J. Roy Brown.
Virgil Russell Purvis Jr., Jonesville, for D.E. Brown Jr. and Brown Bros.
Before GUIDRY and, LABORDE, JJ., and CULPEPPER,[1] J. Pro Tem.
*257 LABORDE, Judge.
W.C. Brown appeals judgments in three consolidated claims, arising from his actions as a succession representative for the succession of his brother, J. Roy Brown. Finding invalid a donation inter vivos by decedent J. Roy Brown in favor of his grandnephews, William S. Brown and J. Michael Brown, we affirm in part and reverse in part.

FACTS
J. Roy Brown died December 1, 1989 after executing a will on May 1, 1989, naming his brother, W.C. Brown, as executor of his estate. Two of these three consolidated suits were filed against W.C. Brown as the executor of the estate, alleging that W.C. Brown acted improperly in disposing of decedent's property. In the third suit, W.C. Brown alleged that his nephew, D.E. Brown, Jr., owed him reimbursement for two certificates of deposit which were pledged by W.C. Brown to secure a note on behalf of D.E. Brown, Jr.
In the first suit, the grandnephews of J. Roy Brown allege that W.C. Brown cheated them out of gifts made by decedent. They claim that during his life decedent had established joint accounts (two certificates of deposit, $100,000 and $25,000, and one bank account, approximately $80,000) with each of them. According to each of them, the accounts in the names of "J. Roy Brown or William Scott Brown" and "J. Roy Brown or J. Michael Brown," constituted gratuitous donations. W.C. Brown had general power of attorney to act for the now deceased J. Roy Brown.[2]
In the second suit, D.E. Brown, Jr., nephew of J. Roy Brown, alleges that decedent had given him a gift of $87,000. W.C. Brown, acting as executor, thought differently and treated this "gift" as a loan, depleting D.E. Brown, Jr.'s residual legacy by that amount.
In the third suit, W.C. Brown sued D.E. Brown, Jr. and Brown Brothers, Inc. to recover $200,000 owed to W.C. Brown personally and $200,000 owed to the estate of J. Roy Brown.[3]
These three separate cases were consolidated at the trial court level. In its reasons for judgment, the trial court found that W.C. Brown never legally qualified as the executor of the Estate of J. Roy Brown, nor did any other person appear as a succession representative.[4] Because it concluded that the estate of J. Roy Brown was not a proper party to any of these proceedings, the trial court rejected any claims on its behalf.
As to the claims in the first suit by William S. Brown and J. Michael Brown against W.C. Brown, the trial court rendered judgment in favor of William S. Brown for $105,000 and in favor of J. Michael Brown in the amount of $100,000, finding that W.C. Brown forged endorsements on checks representing the entire amounts deposited. The trial court concluded that plaintiffs owned the monies deposited in these accounts and W.C. Brown had tortiously converted these funds.
As to D.E. Brown, Jr.'s claims against W.C. Brown in the second suit, the trial court found that W.C. Brown violated his fiduciary obligations to D.E. Brown, Jr., by gathering the property of J. Roy Brown and disbursing it under his own discretion, without court authorization or approval. W.C. Brown claimed that D.E. Brown, Jr. owed the estate $87,500, in repayment of a loan made by the decedent to D.E. Brown, Jr. However, the trial court sided with D.E. Brown, Jr., finding that the absence of any mention of the $87,000 transfer in decedent's will reveals the *258 decedent's intent that this payment was a gift. The trial court awarded D.E. Brown, Jr., the amount of $137,779.90, which included 3/4th's of the $87,000 (the sum W.C. Brown withheld from D.E. Brown, Jr.'s legacy) plus $72,529.90 to make D.E. Brown, Jr. whole for his 1/4 legacy called for by decedent's will. The trial court also imposed a penalty of 20% interest per annum as provided for under La.C.C.P. Art. 3222.
As to the third claim, by W.C. Brown against D.E. Brown, Jr. and Brown Brothers, Inc., the trial court determined that the defendants were each responsible for $28,333.33 or 1/6th of the $175,000 in C.D.'s posted as collateral by W.C. Brown to the Jonesville Bank and Trust and seized for failure to pay on a promissory note.

Assigned Errors
W.C. Brown has appealed and asserts seven errors which are consolidated on appeal. We summarize them as follows:
1. In the suit between W.C. Brown v. D.E. Brown, Jr. and Brown Brothers, Inc., the trial court erred when it concluded that only $175,000 was paid by W.C. Brown to the Jonesville Bank and Trust Co., and that W.C. Brown was a comaker on the promissory note rather than a surety.
2. In the suit between D.E. Brown, Jr. v. W.C. Brown and the Estate of J. Roy Brown, the trial court erred in concluding that W.C. Brown violated his fiduciary obligations to D.E. Brown, Jr., and rendering judgment against W.C. Brown personally plus 20% interest.
3. In the same suit, the trial court erred in concluding that the $87,000 transfer by J. Roy Brown to D.E. Brown, Jr., was a gift rather than a loan, despite the failure of proof by D.E. Brown, Jr., and substantial testimony that D.E. Brown, Jr. acknowledged to J. Roy Brown, before his death, that he owed the money.
4. In the same suit, the trial court erred in allowing D.E. Brown, Jr. to proceed when he had no standing or right of action because he assigned his rights to the Jonesville Bank by Act of Notarial Assignment.
5. In the suit between William S. Brown and J. Michael Brown v. W.C. Brown, the trial court erred in concluding that W.C. Brown tortiously converted funds.
7. In the same suit, the trial court erred when it granted judgment in favor of William S. Brown for $105,000 and in favor of J. Michael Brown in the amount of $100,000 based on the conclusions that the "either/or" accounts constituted donations inter vivos.

ARGUMENT

I. CLAIM BETWEEN W.C. BROWN AND W.S. BROWN
At trial, appellant W.C. Brown and other members of his family claim that J. Roy Brown only put the names of his grandnephews on these accounts for FDIC insurance protection, as the amounts in the accounts reached the $100,000 cap for insurance coverage. Finally, they claim that the grandnephews, Bill and Mike, both signed affidavits of ownership stating that they had no ownership interest in these accounts.
On the other hand, J. Roy Brown's grandnephews, William S. Brown and J. Michael Brown, allege that during his life he gave them gifts of $100,000 and $105,000 respectively by opening joint accounts in his name or the name of his grandnephews. They alternately claim that they had no knowledge of what they were signing or that the documents they signed had been altered.

Law of Donations
The lower court held the funds belonged to Bill and Mike Brown because W.C. Brown had tortiously converted these funds by depositing them in the account of J. Roy Brown. The record contains no written records to substantiate the grandnephews' claims that the money they claim was a gift.
The dispositive issue is whether J. Roy Brown validly donated these funds to his grandnephews. C.C. art. 1570 provides that no disposition mortis causa shall be made otherwise than by last will or testament; every other form is abrogated. As the will makes no mention of any bequests to his grandnephews, there was no valid donation mortis causa.
*259 Because no valid manual gift or authentic act has been shown in the instant proceeding, if the grandnephews Mike and Bill are to succeed, they must do so on other grounds. The question thus becomes whether the funds were transferred by valid donation inter vivos. The requirements for a donation inter vivos can be found in C.C. art. 1468:
Art. 1468. Donation inter vivos, definition
A donation inter vivos (between living persons)* is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it.
We hold that the trial judge erred regardless of the nature of the gift. Donations inter vivos may be made by manual gift or authentic act. Manual gifts are valid only as to corporeal movables. C.C. art. 1539. For a gift to be considered manual in nature, delivery is required. C.C. art. 1539. For purposes of donation inter vivos, delivery is defined as relinquishing control or dominion over property and placing it within the dominion of the donee, irrevocably. Succession of Serio, 597 So.2d 91 (La.App. 4 Cir.), writ denied, 600 So.2d 677 (La.1992). Thus, because no legally contemplated delivery ever occurred, even if the funds used to purchase the certificates of deposit are considered corporeal movables (since cash is treated as a corporeal movable), see Succession of Amos, 422 So.2d 605 (La.App. 3 Cir.1982), the parties failed to meet the requirements for a manual gift.
Nor can we say that a valid donation inter vivos was made by authentic act. A donation inter vivos must meet strict form requirements, that is by an act before a notary and two witnesses. Bergeron v. Bergeron, 411 So.2d 1183, 1187 (La.App. 4 Cir. 1982) In other words, even if a testator intends to irrevocably divest himself of a thing, a defect of form is fatal to fulfillment of that intent.
In the absence of such a showing, appellees' case cannot stand. C.C. art. 1536 requires:
Art. 1536. Donation of immovables or incorporeals, form required
An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.[5]
Bank accounts constitute incorporeal things. Carter v. Carter, 538 So.2d 1121 (La.App. 5 Cir.1989).
The donee bears the burden of proving validity of alleged donations, and proof must be "strong and convincing" that the donor intended to give the property. Fogg v. Fogg, 571 So.2d 838 (La.App. 3 Cir.1990), writ denied, 575 So.2d 372 (La.1991). As the nephews' own admission as well as substantial evidence suggest, J. Roy Brown perfected no authentic act to validly transfer his ownership of the funds contained in the accounts. The nephews did not satisfy the required burden of proof that a donation inter vivos was intended between the parties. The mere purchase of a certificate of deposit in the name of purchaser or a second party is not a delivery which would constitute a valid donation of deposit to the second party. Succession of Hemelt, 523 So.2d 891 (La. App. 4 Cir.1988), and Mike and Bill cannot now disavow their signed affidavits declaring they had no rights to the accounts.

Negotiable Instruments
Nor do we find merit in appellees' arguments that our state's negotiable instruments law warrants a finding in their favor. While it is true that a certificate of deposit is a "negotiable instrument," R.S. 10:3-104(2)(c) (Note: now 10:3-104(j)), W.C. Brown could have merely signed the checks on behalf of J. *260 Roy Brown since the check was payable to either party and he had the power of attorney from J. Roy Brown. R.S. 10:3-116 (NOTE: now 10:3-110(d)) provides:
§ 3-116. Instruments payable to two or more persons
An instrument payable to the order of two or more persons
(a) if in the alternative is payable to any one of them and may be negotiated, discharged, or enforced by any of them who has possession of it;
(b) if not in the alternative, is payable to all of them and may be negotiated or discharged only by all of them, but may be enforced by any one of them, the others being considered necessary parties only in accordance with Article 643 of the Louisiana Code of Civil Procedure.
Regardless of the merit of this allegation in a criminal forum, it is of no moment to us here. Thus, even if W.C. Brown did forge the signatures of William S. Brown and J. Michael Brown when he transferred money to the account of his ward, this was insufficient grounds upon which the trial judge could base his conclusion.

II. CLAIM BETWEEN D.E. BROWN, JR. AND W.C. BROWN

Assignment of Interest
At the outset, W.C. Brown argues that under C.C.P. art. 698, D.E. Brown, Jr. has no right of action to bring this suit because he executed an act of notarial assignment, transferring all of his interest in the Succession of Roy Brown to the Jonesville Bank and Trust Company. C.C.P. art. 698 provides as follows:
Art. 698. Assignor and assignee
An incorporeal right which has been assigned, whether unconditionally or conditionally for purposes of collection or security, shall be enforced judicially by:
(1) The assignor and the assignee, when the assignment is partial; or
(2) The assignee, when the entire right is assigned.
Further, C.C.P. art. 927 provides that an appellate court may notice on its own motion the peremptory exception of no right of action.
D.E. Brown, Jr., contends that this assignment was made to the bank only as security for outstanding loans that he had at the bank. At trial, D.E. Brown, Jr., testified that he no longer owed any money to the Jonesville Bank. Therefore, he claims that all of his interest in the succession of J. Roy Brown reverted back to him.
For the reasons which follow, we agree with D.E. Brown, Jr. We conclude that D.E. Brown, Jr. has standing as the bank's assignment, like a mortgage on a house, constitutes no more than a partial interest which does not bar its owner's access to the courts. Comment d of C.C.P. article 698 maintains:
A failure to comply with this article produces different results, depending on the facts. If there has been an assignment of the entire right and the suit is brought in the name of the assignor, the latter has no right of action, and the court cannot adjudicate in the absence of the indispensable party plaintiff, the assignee. If there has been a partial assignment, and the suit is brought only by the assignor or the assignee, there is a nonjoinder of a necessary party. If the defendant fails to object timely to the nonjoinder of a necessary party, the objection is waived and the court may make an adjudication. The defendant has consented to the partial assignment.
As defendant did not timely raise a dilatory exception of nonjoinder of a necessary party, the exception is deemed to have been waived. Therefore, we find no merit to this assigned error and turn to the merits on appeal.
D.E. Brown, Jr. claims that W.C. Brown mishandled J. Roy Brown's estate by deducting $87,000 from the legacy left him in Roy's will. W.C. Brown claimed the $87,000 was a loan to D.E. Brown, not a gift, and therefore deductible from his legacy. The trial court agreed with D.E. Brown, finding that the $87,000 was gratuitous, and not intended to be a loan to be repaid.
The facts concerning this transfer are as follows: D.E. Brown began having financial problems in 1985, and the Federal Land *261 Bank of Jackson threatened to foreclose on some property he owned south of Jonesville. Brown testified that he went to his uncle Roy and asked for some help in paying the $87,000 owed to the bank, and that Roy Brown offered to pay only part of the debt. D.E. stated that soon after he went to his mother-in-law to ask for help in paying the rest of the obligation, his uncle Roy told him that he would just give D.E. the entire amount.
No evidence exists to establish that a loan was agreed to by the parties, as no note or other paperwork exists. The only evidence to show that the transfer was a loan was testimony by other members of Roy Brown's family that he mentioned it once before the end of his life. J. Roy Brown's will made no mention of such a loan between the parties which must be repaid or D.E. Brown's inheritance should be reduced by such amount.
The question again becomes whether a valid donation inter vivos in the form of a manual gift was completed between the parties. The donee bears the burden of proving validity of alleged donations, and proof must be "strong and convincing" that the donor intended to give the property. Fogg v. Fogg, supra.
Although the record is not perfectly clear, it would appear to us that a manual gift in the form of cash or check (subsequently cashed) was delivered by decedent to D.E. Brown, Jr. Therefore, we affirm the trial court's finding that the $87,000 was in fact a gift to D.E. Brown, Jr. and not a loan to be repaid. W.C. Brown was not entitled to reduce D.E. Brown, Jr.'s share of the Estate of J. Roy Brown by $87,000. Accordingly, we find no manifest error or abuse of discretion in this ruling by the trial court and as such affirm the trial court's judgment that W.C. Brown pay D.E. Brown, Jr. $65,250.00, the amount W.C. Brown withheld from D.E. Brown, Jr.'s legacy. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

Interest
W.C. Brown also argues that the trial court erred in assessing a penalty of 20% interest per annum as authorized by C.C.P. art. 3222, which provides as follows:
Art. 3222. Deposit of succession funds; unauthorized withdrawals prohibited; penalty
A succession representative shall deposit all moneys collected by him as soon as received, in a bank account in his official capacity, in a state or national bank in this state, and shall not withdraw the deposits or any part thereof, except in accordance with law.
On failure to comply with the provisions of this article, the court may render a judgment against the succession representative and his surety in solido to the extent of twenty percent interest per annum on the amount not deposited or withdrawn without authority, such sum to be paid to the succession. He may also be adjudged liable for all special damage suffered, and may be dismissed from office.
Although named as the executor in J. Roy Brown's will, W.C. Brown did not officially qualify as the succession representative in the estate of J. Roy Brown. We find no evidence that he converted funds from the estate for his own use. Rather, he withdrew funds from the "either/or" accounts and deposited them into an account in the name of J. Roy Brown. In gathering the funds owed the succession he erred on the side of the estate in demanding D.E. Brown return what he believed to be a debt of $87,000. The executor has a fiduciary duty to the estate, and is required to act as a prudent administrator. C.C.P. art. 3191. Further, a succession representative is empowered to enforce all obligations in favor of the estate. W.C. Brown collected the funds he believed belonged to the estate. Since we find W.C. Brown did not tortiously convert the funds of the estate, the trial court was not entitled to assess a penalty under C.C.P. art. 3222.

III. W.C. BROWN V. D.E. BROWN, JR.
W.C. Brown claims that he pledged two C.D.'s amounting to $200,000 on behalf of D.E. Brown, Jr. and Brown Brothers, as security for a loan obtained by Brown Brothers. He further claims that his C.D.'s were cashed in by Jonesville Bank & Trust and that D.E. Brown owes him reimbursement of such funds.
*262 The trial court held that all parties to the note, including W.C. Brown and D.E. Brown, Jr., were comakers on the note and as such each of the six parties were liable for their share of the obligation. As such, D.E. Brown was found to owe 1/6 of $175,000, the amount found by the trial court to have been seized by the bank.
On this subject, the Civil Code has this to say:
Art. 1803. Remission of debt to or transaction or compromise with one obligor
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a presumption that the remission of debt was intended for the benefit of all the solidary obligors.
Acts 1984, No. 331, § 1.
Art. 1804. Liability of solidary obligors between themselves
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.
W.C. Brown claims that he was only a surety on the note, merely pledging his C.D.'s as security for the principal obligation, thus freeing him from the limited recovery provisions just cited, and not a comaker of the note who would be solidarily liable for the entire amount of the note.
Suretyship is defined in C.C. art. 3035:
Art. 3035. Definition of suretyship
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so.
Suretyship cannot be presumed; an agreement to become a surety must be expressed, and must be construed within the limits intended by the parties to the agreement. Placid Refining Co. v. Privette, 523 So.2d 865 (La.App. 1 Cir.), writ denied, 524 So.2d 748 (La.1988). The form requirements for a contract of suretyship are set out in C.C. art. 3038:
Art. 3038. Formal requirements of suretyship
Suretyship must be express and in writing.
As there is no evidence of an express, written contract of suretyship entered into between the parties, we cannot assume that such an obligation was intended by the parties. The trial court correctly held that W.C. Brown is solidarily liable on the debt he cosigned with D.E. Brown, Jr. to the Jonesville Bank and Trust. Consequently, we affirm its finding that D.E. Brown, Jr. owes W.C. Brown reimbursement for only 1/6 of the approximately $200,000 seized.

CONCLUSION
We reverse the trial court's judgment in favor of William S. Brown and J. Michael Brown, finding that a valid donation inter vivos was not executed by the decedent in their favor. We affirm as to the other conclusions of the trial court: that D.E. Brown received a gift of $87,000 from decedent, not a loan, and his legacy under decedent's will should not have been reduced by such amount, and that W.C. Brown was a co-maker on a note on behalf of Brown Brothers, and therefore can only recover 1/6 share of the amount he used to secure the note from D.E. Brown, another solidary obligor on the note.

*263 DECREE
For the reasons set forth above, the judgments of the trial court are affirmed in part and reversed in part. Appellant W.C. Brown to pay costs in cases against D.E. Brown, Jr. William S. Brown and J. Michael Brown to pay costs in their suit against W.C. Brown.
Affirmed in part and reversed in part.
NOTES
[1] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[2] The question is whether the forged signatures furnish an adequate legal basis for the conclusion reached by the trial court. The trial judge ultimately held in favor of the grandnephews. In his written reasons, the trial judge attributed his conclusion to the executor's having forged the names of the grandnephews prior to the testator's death, although the proceeds from the C.D.'s were deposited in an account in the name of J. Roy Brown.
[3] Both W.C. Brown and J. Roy Brown pledged C.D.'s of $200,000 (for a total of $400,000) to secure a note executed by D.E. Brown, Jr., individually and as president of Brown Brothers.
[4] The trial court stated in its reasons for judgment that W.C. Brown did not properly qualify as the succession rep.; apparently, he did not petition the court for confirmation under CCP 3081; the parties have not questioned this fact, and have apparently acquiesced to this fact.
[5] An invalid donation can be confirmed under C.C. art. 1845:

A donation inter vivos that is null for lack of proper form may be confirmed by the donor but the confirmation must be made in the form required for a donation.
The universal successor of the donor may, after his death, expressly or tacitly confirm such a donation.
As the parties did not confirm this "donation" with a posterior authentic act, the gift was not a valid donation inter vivos and cannot be upheld by this court.