^LOTTINGER, Chief Judge.
In this action, plaintiff filed suit for partition of community property. Following a trial, the trial court rendered judgment in favor of plaintiff, and defendant applied for a new trial for purposes of argument only. Following a hearing, the trial court set aside its original judgment and rendered a new judgment reducing the earlier monetary award to plaintiff. From this judgment, defendant now appeals.
*842 FACTS
Plaintiff Dianne F. Bertueci (hereafter, “Mrs. Bertueci”) and defendant Paul E. Ber-tucci (hereafter, “Mr. Bertueci”) were married on January 27, 1988. On January 17, 1992, Mrs. Bertueci filed a petition for divorce together with a petition for partition of community property. The subsequently rendered divorce decree terminated the community property regime existing between them retroactively to that date.
.In the instant partition suit, the trial judge issued written reasons for judgment, and thereafter signed a final judgment in accordance therewith on February 13, 1995. The judgment awarded to each party the movables in their possession, and further awarded to Mr. Bertueci the possession of all movable accounts previously belonging to the community. The judgment also awarded to Mrs. Bertueci the sum of $37,171.00, as her interest in the former community.
Subsequently, on the motion of Mr. Ber-tucci, the trial court granted a new trial for the purposes of argument only. On May 15, 1995, following argument, the trial court set aside its earlier judgment of February 13, 1995, and rendered a new judgment which was identical to the earlier judgment except that the $37,171.00 award to Mrs. Bertueci was reduced to $32,018.00.[1] It is from this judgment that Mr. Bertueci now appeals.
ASSIGNMENTS OF ERROR
On appeal, Mr. Bertueci asks us to consider the following assignments of error:
1) The trial court erred in holding that the entire balance of the Hibernia Bank checking account was an asset of the former community.
2) The trial court erred in holding that $9,449.00 of the Fidelity Homestead IRA was attributable to the former community.
|33) Accordingly, the trial court erred in awarding Mrs. Bertueci judgment against Mr. Bertueci in the sum of $32,018.00 as her interest in the former community.
ARGUMENT AND LAW
Simply put, Mr. Bertueci asserts that but for the trial court’s erroneous computation of the community interests in the cheeking account and the IRA account, it would not have awarded Mrs. Bertueci the sum of $32,018.00 as her interest in the former community. It should be noted that the court’s computation of the community interest in these accounts was previously assigned as error by Mr. Ber-tucci as part of his motion for a new trial; however, the trial court declined to disturb its earlier findings as to these issues. In our review of the trial court’s decision, we will discuss each of these accounts separately.
1. Hibernia Bank Checking Account
In written reasons prepared in connection with its original judgment of February 13, 1995, the trial court found that the Hibernia cheeking account was “clearly a community asset.” The trial court accepted the figure of $73,963.00 as the applicable balance of said account,[2] and determined that Mr. Bertueci was in possession of, or had expended for his own purposes, the sum of $55,000.00, while Mrs. Bertueci was in possession of $18,-000.00.
Mr. Bertueci asserts that the trial court erred in its determination that the entire balance of the checking account was community property, and contends that a large portion of the funds in this account, approximately $73,166.53, were derived from two checks that he received several months earlier from the Resolution Trust Corporation (RTC).[3] For this reason, Mr. Bertueci argues that the checking account balance *843 should be reduced by $30,020.00[4] so as to reflect the value of his separate property.
| ¿At trial, Mrs. Bertucci contended that she and Mr. Bertucci lived together prior to their marriage, and that she was a co-owner of the funds in a passbook account opened by Mr. Bertucci at Southern Savings Bank. In support of this contention, Mrs. Bertucci introduced the passbook in question which indicated that her maiden name of Dianne Bennett was added thereon as of September 25, 1985, some three years prior to their marriage. Mrs. Bertucci explained that Mr. Bertucci was hospitalized at the time, and placed her name on his passbook account to allegedly keep the funds contained therein from his two older children. Mrs. Bertucci further contended that, following their marriage, the funds in this account were withdrawn and placed in a new, joint passbook account at Southern Savings. Mrs. Bertucci admitted in 1991 after the failure of Southern Savings that she and her husband received a check from the RTC in 1991 for approximately $44,000.00 as reimbursement for the funds held in this account, and deposited these funds into their joint checking account at Hibernia.
Mr. Bertucci agreed that on October 28, 1991, he deposited $43,519.02 into the community checking account at Hibernia Bank. According to Mr. Bertucci, this sum represented a reimbursement by the RTC of the funds formerly held in the joint passbook account at the now-defunct Southern Savings Bank. Mr. Bertucci further testified that a portion of these funds, $7,634.06, was held by him prior to his marriage in an earlier passbook account at Southern Savings and that, following his marriage, he transferred these funds to a new, joint account at Southern opened in his name and that of Mrs. Bertuc-ci. Mr. Bertucci denied ever adding Mrs. Bertucci’s name to the earlier account.
Mr. Bertucci testified that the deposit of $29,647.51 on November 25, 1991, represented a reimbursement by the RTC of two $10,000.00 certificates of deposit which he purchased prior to his marriage together with the accrued interest thereon. Mr. Ber-tucci concedes that he has no evidence to substantiate the existence of these certificates of deposit other than yearly interest statements for accounts held by Southern Savings from 1986 through 1989. These statements, which were introduced as defendant’s exhibit # 8, reflect the annual interest earned on three accounts — the aforementioned passbook account and two certificates of deposit. The statements for 1986 and 1987 bear the name of Paul Bertucci, while the statements for 1988 and 1989 reflect the names of Paul Bertucci or Dianne Bertucci.
|5Upon review of this matter, we note that there is no testimony in the record to indicate that both Mr. Bertucci and the then Dianne Bennett made contributions to the earlier savings account initially opened at Southern Savings by Mr. Bertucci prior to his marriage. Rather, Mrs. Bertucci testified that Mr. Bertucci placed her name on his account in an alleged attempt to keep the funds contained therein from his children. Mr. Bertucci of course denies this, and asserts that his ex-wife added her name to this passbook following their separation. It is clear nevertheless, that a savings account is an incorporeal thing which can only be donated by a notarial act passed in compliance with La. Civil Code art. 1536. Brown v. Brown, 93-1105, 93-1106, 93-1107 (La.App. 3rd Cir. 4/6/94); 635 So.2d 255, writ denied, 94-1667 (La.10/28/94); 644 So.2d 649. As there no evidence that this was done, Mrs. Bertucci could not have been a co-owner of the earlier passbook account prior to her marriage. Accordingly, we conclude that the funds in this account prior to the date of the marriage, January 27, 1988, must be considered the separate funds of Mr. Bertucci.
Both parties testified that the funds from this earlier account at Southern Savings were later placed in a new, joint account at that institution several months after their *844 marriage. The parties further agree that following the failure of Southern Savings, they received a check from the RTC in reimbursement of these funds. This cheek, totaling $43,519.02, was deposited into the community checking account at Hibernia Bank on October 28, 1991. The trial court determined this account to be an asset of the former community.
La. C.C. art. 2340 provides that “[tjhings in the possession of a spouse during the existence of a regime of community of ac-quets and gains are presumed to be community, but either spouse may prove that they are separate property.” Additionally, La. C.C. art. 2341 states that “property acquired by a spouse prior to the establishment of a community property regime” is to be considered the separate property of that spouse.
Further discussion on this point can be found in Matrimonial Regimes, 16 Louisiana Civil Law Treatise, § 3.40, (1989) wherein Professors Katherine S. Spaht and W. Lee Hargrave stated:
A necessary implication of the text of Civil Code Article 2341 is that only a new thing acquired with other property or funds becomes community. Combinations of separate and community fungible items do not produce a new thing. In such a case, the mixture may be presumed community, but if proof is made of the 16separate contribution, the separate estate of one spouse will remain the owner of those things.
[[Image here]]
It is arguable that separate and community funds put into one bank account do not produce a new thing; money is the ultimate fungible item. In such an analysis, the funds in the account are presumed community, but if it can be proved that separate funds were deposited and not withdrawn, those funds would remain separate. On the other hand, it might be argued that a new thing, an account, is produced and is all community. Even so, if it can be proved that separate funds were contributed, the separate estate of that spouse is entitled to reimbursement for the use of those funds. The sum involved would be the same under either analysis. Under the first analysis, the spouse whose separate funds were deposited still owns them. In the second case, that spouse has a personal claim against the other for that amount. In most cases, this would make no difference between the parties.
K. Spaht and L. Hargrave, Matrimonial Regimes, 16 Louisiana Civil Law Treatise, § 3.40, (1989), at 117-18. (Footnotes omitted).
Subsequently, in the 1996 pocket part to above-referenced work, Professors Spaht and Hargrave discussed the case of Landwehr v. Landwehr, 547 So.2d 752 (La.App. 4th Cir. 1989). In Landwehr, the trial court would not allow evidence to trace separate funds placed in a community account, “apparently following the erroneous, but widely held view that simple commingling of separate and community funds makes the whole checking account community.” Spaht and Hargrave further take issue with the fourth circuit’s disposition of the matter stating that:
[W]hether commingling occurred should not be the issue; commingling does not make the whole account community. It ought to be clear under Civil Code Article 2338 that it is only when a nonfungible thing is acquired with separate and community funds that it is classified as community. Fungible items, including bank accounts, are not within that rule and if tracing can be done, a part of the funds can be separate and a part community. Furthermore, in this case, even if the account was considered community funds, it was still available for the husband to prove that some of the separate funds were used to pay community debts.
K. Spaht and L. Hargrave, Matrimonial Regimes, 16 Louisiana Civil Law Treatise, § 3.40, (Supp.1996).
Considering the foregoing, and in light of the fact that the Southern Savings passbooks and Hibernia bank statements reveal that at no time did the balance of these successive accounts Ufall below $7,634.06, the amount claimed by Mr. Bertucci as his separate property, we must conclude that the trial *845 court erred in failing to give Mr. Bertucci credit for this amount.
We turn now to Mr. Bertucci’s claim that the sum of $29,647.51, which was deposited into the community checking account on November 25,1991, was a reimbursement by the RTC of certificates of deposit held by him prior to his marriage and, as such, constituted separate property. While we, like the trial court, recognize the difficulties involved with attempting to obtain information from the RTC, we are nevertheless mindful that it was incumbent upon Mr. Bertucci to establish the existence of these funds as separate. • This he has failed to do.
2. Fidelity Homestead Retirement Account
In written reasons prepared in connection with its original judgment of February 13, 1995, the trial court found that the IRA account was “created before marriage, and at the time of marriage it contained $4410.00 of separate funds. Therefore, only $9449.00 of this account is community.” This finding by the trial court would place the total balance of the account at $13,859.00.
On appeal, Mr. Bertucci asserts that the trial court miscalculated the total balance of the IRA account, and after deduction of his separate funds, the resulting balance attributable to the community was too high.
At trial, the parties stipulated that the balance in the Fidelity IRA account as of December 30, 1991 was $10,340.77.[5] Mrs. Bertucci testified that on December 26, 1991, the date she left the matrimonial residence, her husband deposited $3,519.02 into his IRA account at Fidelity.[6] To substantiate her testimony, Mrs. Bertucci introduced as plaintiffs exhibit # 6, a canceled check drawn on the couple’s Hibernia Bank account for that amount. It is obvious that the trial court, using round numbers, added the $3,519.00 deposit of December 26, 1991, to the $10,-340.00 stipulated balance as of December 30, 1991, and arrived at a total balance of $13,-859.00. From this sum, the court, again using round numbers, deducted the sum of 18$4,410.00[7] which was the value of Mr. Ber-tucci’s IRA account prior to his marriage and the commencement of the community. This left a resulting balance of $9,449.00 which the trial court attributed to the community.
In our opinion, the trial court clearly erred in adding the $3,519.02 deposit of December 26, 1991, to the December 30, 1991 stipulated balance of $10,340.77. It would seem likely that any sums deposited prior to December 30,1991, would be reflected in the balance as stipulated to on that date. Relying on the stipulated account balance of $10, 340.77 on December 30, 1991, and after deduction of the IRA’s value of $4,410.95 prior to the inception community, we conclude that the community interest in Mr. Bertucci’s IRA amounted to $5,929.82, not $9,449.00, as found by the trial court.
3. Trial Court’s Computations
The final assignment of error raised by Mr. Bertucci is that the trial court erred in its determination that Mrs. Bertucci was entitled to judgment against Mr. Bertucci in the sum of $32,018.00 as her interest in the former community. Based upon our analysis of the foregoing issues and our disposition thereof, we agree.
The trial court erred in its determination that the entire balance of the Hibernia checking account was community property. The balance of said account is hereby amended and reduced from $73,963.00[8] to $66,329.41 which sum reflects the actual value of the community interest less the value of Mr. Bertucci’s separate funds. The portion of *846 this sum in Mr. Bertucci’s possession is accordingly reduced from $55,000.00 to $48,-329.41.
The trial court’s valuation of the community interest in the Fidelity IRA account is similarly amended and reduced from $9,449.00 to $5,929.82.
| gAccordingly, the total amount owed to Mrs. Bertucci by Mr. Bertucci for her interest in the former community is reduced from $32,018.00 to $21,828.23.
CONCLUSION
Considering the foregoing, we hereby reverse the trial court’s determination that the entire balance of the Hibernia Bank checking-account was community property. Based upon our calculations, Mr. Bertucci is in possession of $48,329.41 in funds attributable to the former community. The trial court’s valuation of the community interest in the Fidelity IRA account is similarly amended and reduced from $9,449.00 to $5,929.82. Accordingly, the total amount owed to Mrs. Bertucci by Mr. Bertucci for her interest in the former community is reduced from $32,018.00 to $21,828.23. All costs associated with this appeal are to be shared equally by the parties.
REVERSED IN PART AND RENDERED, AMENDED IN PART AND AS AMENDED, AFFIRMED.

.The subsequent judgment reduced the amount awarded to Mrs. Bertueci for her share of the community payments made on Mr. Bertucci’s separate residence.

. The record reflects that the beginning balance on said account as of December 5, 1991 was $73,963.47.

. Bank statements from Hibernia introduced into evidence reveal that $43,519.02 was deposited into the joint checking account on October 28, *843 1991. Thereafter, on November 25, 1991, $29,-647.51 was deposited into this account.

. Mr. Bertucci calculates that prior to the time of his marriage, he held at least $22,386.25 in two certificates of deposit together with $7,634.06 in a passbook account at the now-defunct Southern Savings Bank.

,There is no other evidence in the record which would indicate the value of the IRA on January 17, 1992, the date the community was terminated.

. Mr. Bertucci could not recall nor could explain this transaction, but denies depositing this sum into his IRA.

. Mr. Bertucci placed into evidence Internal Revenue Service form 5498 as defendant's exhibit# 1. This form reflects that at the beginning of 1988, twenly-seven days before the commencement of the community, Mr. Bertucci's IRA account, which was then on deposit at the now-defunct Southern Savings Association, had a value of $4,410.95.

.The trial court, once again using round numbers, valued the community interest in the checking account at $73,963.00. In light of Mrs. Bertucci’s testimony that she had withdrawn $18,000.00 of community funds for her own use, the court determined that Mr. Bertucci was in possession of $55,000.00 in community funds. As we previously noted in footnote # 2, the rec *846 ord reflects that $73,963.47 was the beginning balance on said account as of December 5, 1991.