THOMPSON, Presiding Judge.
 

 Jimmie Holden appeals from a summary judgment entered by the Madison Circuit Court in favor of Edwards Specialties, Inc. (“ESI”). For the reasons stated herein, we reverse the summary judgment and remand the cause.
 

 Since 1993, Holden has resided in Madison County on property that he owns. The property is located outside the corporate limits of the City of Madison. In 2003, ESI began developing as a subdivision certain real property it owned in the City of Madison. This development was known as Windsor Parke. As part of this development, ESI constructed and developed road curbs and other improvements, including a water-detention pond located at the southeastern corner of Windsor Parke. Windsor Parke is at a higher elevation than Holden’s property. Surface water in Windsor Parke is channeled by roads, curbs, and pipes and collected into two detention ponds located on the southern boundary of Windsor Parke. The detention pond at the southeast corner of Windsor Parke ejects water through a single pipe into a ditch that flows through Holden’s property.
 

 On April 15, 2008, Holden filed an action against ESI. He alleged that ESI’s development of Windsor Parke had increased the quantity and velocity of water that was channeled onto his property, causing flooding on his property. He alleged that the increased flow of water onto his property had caused damage to his house, including damage to the floor insulation, the HVAC ductwork, the floor registers, the crawl space, and the floor structure. He also alleged that the flooding had destroyed his central-air-conditioning unit, had caused his property to erode, and had resulted in mold in his house. Holden alleged that the flooding was ongoing and that ESI had refused to remedy it. In the first count of his complaint, Holden alleged that the flooding of his property by ESI constituted a trespass. In the second count, he alleged that ESI’s development of Windsor Parke had caused surface water to be channeled onto his property, causing damage thereto. In his third count, he asserted that ESI’s actions constituted wantonness. In his final count, Holden asserted that he was entitled to an injunction requiring that ESI prevent the channeling of surface water onto his property. ESI filed an answer in which it denied the material allegations of Holden’s complaint.
 

 
 *1031
 
 On January 15, 2009, ESI filed a motion for a summary judgment. It argued that Holden’s trespass claim failed as a matter of law because the evidence demonstrated that the volume and velocity of surface water discharged from the area on which Windsor Parke was developed actually decreased after the development of Windsor Parke. ESI argued that this decrease indicated that it had implemented its drainage system in a reasonable and lawful manner and, moreover, that it negated Holden’s cause of action for channeling surface water onto his property. ESI argued that, because Holden’s trespass claim failed, his wantonness claim failed as well. Finally, ESI argued that Holden was not entitled to the injunction he sought.
 

 ESI attached to its brief in support of its summary-judgment motion, among other things, the affidavit of Billy Hayden Smith, a licensed engineer. After recounting his credentials, Smith indicated that he had inspected the property at issue, had reviewed documents and materials associated with the development of Windsor Parke, and had prepared drainage calculations pertaining to the development of Windsor Parke. He opined that the post-development detention pond located at the southeast corner of Windsor Parke had actually reduced the amount of peak runoff through the culvert located on Holden’s property from 61.3 cubic feet per second to 58.2 cubic feet per second. ESI also attached to its brief excerpts from Holden’s deposition in which he testified that water had entered the crawl space of his house on one or two occasions before the development of Windsor Parke.
 

 On February 23, 2009, Holden filed a response to ESI’s summary-judgment motion in which he argued that Windsor Parke’s drainage system interfered with his possessory rights with regard to his property “by completely flooding his property and home during heavy rains,” which had caused substantial damage to his property. To his response, Holden attached additional excerpts from his deposition in which he had testified that he first began experiencing the problems listed in his complaint immediately after ESI completed construction of the detention pond at issue. Holden also attached to his response the affidavit of Bryant Mastín, who resided on the property immediately north of Holden’s property. Among other things, Mastín stated:
 

 “When Windsor Park[e] was built, a drainage system was built that emptied water from a detention pond into an existing ditch that ran between my property and [Holdenj’s property. When it rains heavily, I have observed the ditch overflow and water flooding my front and back yard as well as [Holdenj’s front and back yards and other surrounding neighbors. Windsor Park[ej was built at a higher level than our property which has further caused water to enter onto our land. Windsor Park[e] contains a detention pond that gathers water from the Windsor Park[e] subdivision. The pond drains into the ditch that runs between our properties. This drainage system was developed by [ESI], I have observed the water from the detention pond drain into the ditch. When it rains heavily, too much water flows from the detention pond into the ditch, and the ditch cannot maintain the amount of water flowing from the detention pond. Basically, the ditch is too small for the amount of water flowing from the detention pond, or the amount of water permitted to flow from the detention pond into the ditch is too much for the ditch to handle. When the water overflows, my property is flooded in both the front and back yards. I cannot even come out of my house. I have brought gravel in to fill my yard
 
 *1032
 
 but the water washed it away. The water rises high enough on my property to flood the floorboards of my vehicles. This did not occur prior to the Windsor Park[e] subdivision. [Holdenj’s property floods similar to my property. However, [Holdenj’s property floods worse than mine because [Holden]’s property is at the bottom of the incline into Windsor Park[e]. The run-off from the subdivision gathers in [Holden]’s yard.”
 

 Holden also attached to his response the affidavit of Reginald Williams, another of his neighbors, in which Williams provided his educational background, indicated that he was an engineering manager in an automobile plant, and opined that the flooding of which Holden complained was caused by the design of the drainage system in Windsor Parke. He stated that he had made his concerns known to city officials and representatives from ESI but that nothing had been done in response to his concerns.
 

 On April 1, 2009, ESI filed motions to strike the affidavits of Mastín and Williams. In its motion to strike Mastin’s affidavit, ESI argued that Mastin’s affidavit contained “speculative and conclusory statements” that Mastín was not qualified to make, including his statement that the ditch was too small to handle the amount of water flowing into it from the detention pond. It argued that Mastín “failed to explain how he concluded that Windsor Parke’s detention pond ha[d] caused and/or contributed to the water flow described in his affidavit” and that Mastín “offerfed] no measurements, calculations, or studies to support his conclusory statements.”
 

 In its motion to strike Williams’s affidavit, ESI argued that, because Williams was not a licensed engineer, he was precluded by law from offering an expert opinion. ESI also argued that Williams’s affidavit lacked a factual predicate for his conclusions and that the affidavit contained inadmissible hearsay.
 

 In response to ESI’s motion to strike Mastin’s affidavit, Holden argued that Mastin’s affidavit testimony was based on Mastin’s observations, of which Mastín had personal knowledge. Holden argued that, pursuant to Rule 602, Ala. R. Evid., a witness can testify to matters of which that witness has personal knowledge. In response to ESI’s motion to strike Williams’s affidavit, Holden argued that Williams’s affidavit testimony was based on Williams’s personal observations, about which Williams was competent to testify. He also argued that Williams’s conclusions were based on general principles of engineering, physics, and water mechanics, of which Williams had expertise. He also argued that Williams was not required to be a licensed engineer to offer expert testimony.
 

 On April 9, 2009, the trial court held a hearing on the pending motions. On April 14, 2009, it entered an order striking Mas-tin’s and Williams’s affidavits and granting ESI’s summary-judgment motion. Holden filed a timely appeal to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The standard by which this court reviews a summary judgment is well settled.
 

 “On appeal, this Court reviews a summary judgment de novo, applying the same standard of review as did the trial court.
 
 Hornsby v. Sessions,
 
 703 So.2d 932 (Ala.1997). To defeat a summary judgment, the nonmoving party must show substantial evidence creating a genuine issue of material fact.
 
 Ex parte General Motors Corp.,
 
 769 So.2d 903 (Ala.1999). ‘Our review is further subject to the caveat that this Court must review the record in a light most favor
 
 *1033
 
 able to the nonmovant and must resolve all reasonable doubts against the mov-ant.’
 
 Hobson v. American Cast Iron Pipe Co.,
 
 690 So.2d 841, 344 (Ala.1997).”
 

 Holt v. Lauderdale County,
 
 26 So.3d 401, 403 (Ala.2008). “A trial court’s determination whether to admit or exclude testimony will not be disturbed on appeal unless the trial court exceeded its discretion.”
 
 Greener v. Killough,
 
 1 So.3d 93, 100-01 (Ala.Civ.App.2008).
 

 On appeal, Holden contends that the trial court erred when it struck the affidavits of Mastín and Williams. He argues that, pursuant to Rule 602, Ala. R. Evid., a witness may testify to a matter of which that witness has personal knowledge. He asserts that, as his neighbors, both Mastín and Williams had personal knowledge of what they observed and that their testimony established that they were in a position to observe, and did observe, the facts on which their testimony was based. ■ He also argues that their affidavit testimony created a genuine issue of material fact precluding the summary judgment the trial court entered in favor of ESI.
 

 Rule 602, Ala. R. Evid., provides in pertinent part that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness’s own testimony.” Rule 602 is satisfied when the proffered testimony is rationally based on the witness’s own perceptions.
 
 See Allen v. Hill,
 
 758 So.2d 574, 576 (Ala.Civ.App.1999).
 

 We conclude that the trial court erred when it excluded Mastin’s affidavit. Mastin’s affidavit testimony, recounted above, is based on his personal knowledge drawn from his personal observations. The passage in Mastin’s affidavit to which ESI objected reads:
 

 “When it rains heavily, too much water flows from the detention pond into the ditch, and the ditch cannot maintain the amount of water flowing from the detention pond. Basically, the ditch is too small for the amount of water flowing from the detention pond, or the amount of water permitted to flow from the detention pond into the ditch is too much for the ditch to handle.”
 

 Previously in his affidavit, Mastín had established that he had personally observed the ditch between his and Holden’s property overflow when it rained heavily and that he had observed the water gathered in the detention pond drain into the ditch. Thus, his statement that, during heavy rains, more water flowed into the ditch from the detention pond than the ditch could contain was based on his personal observations and the readily apparent inference that the overflowing of the ditch was caused by the volume of the water exceeding the available space in the ditch. ESI takes issue with Mastin’s failure to base his statements on calculations of the amount of the water flowing into the ditch and measurements of the ditch. We do not construe the affidavit as a scientific determination of the adequacy of the ditch or a technical determination regarding the volume of water that the ditch could contain. Such calculations and measurements were unnecessary given the fact that Mas-tín personally observed the flooding of the ditch from water flowing from the detention pond that occurred during heavy rains.
 

 Because Mastin’s affidavit testimony was based on his personal observations and perceptions, the trial court exceeded its discretion when it struck his affidavit.
 
 See Allen v. Hill,
 
 758 So.2d at 576 (finding error in trial court’s exclusion of deposition
 
 *1034
 
 testimony of witness when the testimony was rationally based on his own perceptions). As discussed below, because Mas-tin’s affidavit was sufficient to create a genuine issue of material fact precluding summary judgment, we pretermit consideration of whether the trial exceeded its discretion when it struck Williams’s affidavit.
 

 ESI argues correctly that when, as in this case, the dominant estate is located within a municipality and the ser-vient estate is located outside the municipality, the “modified civil law rule” applies in determining the parties’ rights regarding the flow of surface waters.
 
 Street v. Tackett,
 
 494 So.2d 13, 15 (Ala.1986) (emphasis omitted). Under the modified civil law rule, “the upper land owner can alter the flow of surface water to improve his property; however, he has a duty not to unduly burden the lower property by causing substantial damage and not to unreasonably interfere with the possessory rights of the lower landowner.”
 
 Id.
 
 As previously noted, ESI sought a summary judgment on the basis of its affirmative evidence demonstrating that its construction of the detention pond reduced the flow of water into the ditch, rather than increasing it as alleged by Holden. Thus, it argued that, because “the post-development drainage calculations show that the volume and velocity of surface water discharge and run-off is less than it was prior to the development of Windsor Parke, ... it implemented drainage systems in a reasonable and lawful manner.”
 

 Mastin’s affidavit testimony, and the inferences to be derived therefrom, created a genuine issue of material fact with regard to the basis on which ESI sought a summary judgment. Particularly, Mastin’s affidavit indicates that ESI’s detention pond discharged an amount of surface water that caused the ditch to overflow and that this overflow resulted in the flooding of both his property and Holden’s property. Mastín testified that the flooding he observed did not occur before ESI’s construction of the detention pond. A reasonable fact-finder could conclude, based on Mastin’s affidavit testimony, that ESI’s construction of the detention pond resulted in the casting of a larger volume of water into the ditch than had previously been cast into the ditch, resulting in the flooding of which Holden complained. Because the basis of ESI’s summary-judgment motion was that its detention pond had decreased the volume of water flowing into the ditch, Holden carried his summary-judgment burden of proffering substantial evidence demonstrating a genuine issue of material fact. As a result, the trial court erred when it entered a summary judgment in favor of ESI.
 

 Based on the foregoing, we conclude that the trial court exceeded its discretion when it excluded Mastin’s affidavit and that that affidavit demonstrated a genuine issue of material fact precluding the trial court’s summary judgment. Thus, we reverse the trial court’s order striking Mas-tin’s affidavit, we reverse the trial court’s summary judgment in favor of ESI, and we remand the cause to the trial court for further proceedings.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.