MOORE, Judge.
 

 Lamoine Greener appeals from an order of the Butler Probate Court that declared her incapacitated and appointed her daughter, Kandys Killough, as guardian and conservator over Greener’s person and estate. Because we conclude that the probate court committed reversible error by improperly allowing medical testimony to be presented by telephone at trial, we reverse and remand.
 

 Procedural History
 

 On August 9, 2007, Killough filed a petition in the probate court to be appointed guardian and conservator for Greener, alleging that Greener suffered from dementia and was unable to properly care for her own needs. That same date, the probate court set Killough’s petition for a jury trial to be held on September 18, 2007, appointed Dr. Caudill Miller to make a medical evaluation of Greener, appointed Tom Nicholas, a social worker for the Butler County Department of Human Resources (hereinafter “DHR”), to render a report to the court, and appointed Yvonne Williamson as Greener’s guardian ad litem.
 

 On September 18, 2007, after ore tenus proceedings, a jury found Greener to be “an incapacitated person.” Based on the jury’s finding, the probate court entered a judgment granting Killough’s petition. Greener appeals.
 

 Facts
 

 After her husband died in 2004, Greener moved from Texas to Greenville to be closer to Killough. Killough testified that while helping Greener move she and Greener discovered several boxes from the Home Shopping Network which, according to Killough, Greener did not remember ordering. Greener explained that she had ordered some things through the mail but that, when they arrived, they were not as she expected them to be; Greener and Killough returned the items in the boxes they had found.
 

 Greener purchased a house in Green-ville, but she lived there for under a year before she was hospitalized for several months. After her discharge from the hospital, Greener lived with Killough and her husband for approximately six weeks. Greener then purchased a modular house, which she placed on the Killough’s property next to Killough’s house. Killough testified that Greener later paid a contractor $80,000 to add a front porch and a garage to her modular house but that Greener had paid the contractor before he finished the job and he had not completed the improvements.
 

 Killough testified that before Greener entered the hospital she regularly could not find the key to enter her house. Kil-lough and her husband testified that there had been times when Greener had telephoned them because she had forgotten how to get home from the hospital or was lost; Greener denied those incidents. Kil-lough’s husband testified that Greener would forget telephone numbers shortly after learning them and that she would continuously call him for those numbers. Greener stated that she keeps most of her
 
 *96
 
 telephone numbers written down and that she does not try to remember them. At one time, Greener drove into a ditch beside her driveway; Greener explained that it had been late and she had not lived there for very long. At the time of trial, Greener had recently been involved in two automobile accidents; according to Greener, she was not at fault in those accidents. Killough testified that Greener had been paying her own bills, writing her own checks, and balancing her own checkbook since being released from the hospital but that she sometimes forgets whether she has paid her bills.
 

 It is apparent from the testimony of Greener and Killough that Greener has a substantial amount of wealth. While Greener was in the hospital, Killough took over Greener’s accounts and assisted with paying her bills and managing her other finances. Before Greener moved from Texas, she had set up an account in Green-ville, with Killough’s husband as a cosigner, so that he could build her a greenhouse. According to Killough’s husband, when Greener entered the hospital, that account was overdrawn; however, he stated that he and Killough had transferred deposits to that account from Greener’s Texas accounts, and, by February 2007, that account contained approximately $72,000.
 

 Greener testified that she had never had any problems with overdrafts of her accounts but that she did have some problems while she was in the hospital because she could not take care of her bills. Since her release from the hospital, however, Greener stated that she keeps up with her checkbook, pays her own bills, and does not have trouble remembering whether she has paid her bills.
 

 According to Killough, she and Greener had a good relationship until Greener moved to Greenville, but Greener has since become suspicious of Killough. Greener testified that, during the period that Kil-lough’s husband had the key to her house, she noticed that some antique coins had disappeared from her house so she later took back her key and had her locks changed. In February 2006, Greener hired an attorney, who sent a letter to Killough informing her that Greener had revoked a power of attorney that Greener had signed in December 2003. The letter further advised that Greener had terminated access by Killough and her husband to all her financial accounts, that Greener requested that Killough not disturb her in her residence past 8:00 p.m., and that Greener requested that Killough not enter her residence unless Greener invited her. Killough stated that, since she received the letter, she only enters Greener’s house once a month, with Greener’s permission, to clean the air conditioning.
 

 Killough and Shelly Hughes, Greener’s niece, Shelly Hughes, each testified that Greener had changed in recent years. They explained that she did not have as much energy as she had once had, that she had trouble remembering things, and that the state of her home was now messy and cluttered when it had once been neatly kept. Hughes testified that on one occasion in June 2007 she was riding with Greener in her car at dusk and that Greener did not have her lights on, that Greener had insisted the lights were on when they were not, and that Greener was unable to turn on the lights when she tried to do so. Hughes also testified that on one occasion Greener was supposed to send Hughes’s mother a check, that Greener had sent an empty envelope, and that Greener had later found the check, written for $5,000, in a book.
 

 Tom Nicholas, the court-appointed DHR representative, visited Greener at her house on August 17, 2007. Nicholas testi-
 
 *97
 
 fled that Greener only hesitantly allowed him to enter the house. Greener explained that she was reluctant to let Nicholas inside because she did not want him to see the mess in the living room. Nicholas stated that the home was well maintained except that Greener’s living room was strewn with papers, bills, and letters, and the food in the kitchen was stacked on the countertops rather than in the shelves. Greener testified that the clutter was a result of her attempt to go through her things in order to get rid of certain items and to pack others in her endeavor to move back to Texas.
 

 Nicholas further testified that during his visit with Greener he performed a brief interview, wherein he asked her “her name; about who her daughter was; where she came from; her address; date of birth; what month it was; what day of the week it was; [and] who her doctor was,” and that Greener had answered most of the questions correctly except for the current month or day of the week; Nicholas also stated that she did not remember her doctor’s name, but she knew that she had a “woman doctor.” Nicholas stated that, based on his evaluation of Greener and his discussion with Killough, he believed that Greener constituted a danger to herself and others.
 

 Melissa English, a nurse practitioner, testified that in the three years before the trial she had treated Greener approximately nine times for high blood pressure, high cholesterol, ischemic heart disease, a thyroid condition, dementia, and depression. English stated that she “thinks” Greener has vascular dementia that is complicated by her hypothyroidism. English testified that if a patient with hypothyroidism does not take their prescribed medication, they will continue to have clinical manifestations of hypothyroidism, depending on the severity of their illness, and that it will eom-plicate their dementia. English testified that she had seen most of the signs and symptoms that she would expect to see with untreated hypothyroidism in Greener.
 

 English performed blood tests on Greener to determine whether she had been compliant in taking her medications; the initial test indicated that Greener was not taking her medications or was not taking enough. English testified, however, that the last blood test that was taken was normal, and she believed that Greener had been compliant with her medications because, she stated, a home-health provider and Killough had overseen the administration of Greener’s medications. English stated that she believes there is a possibility that, with adequate treatment and compliance with her medicine, there is a possibility that Greener may improve over time.
 

 English performed a mini-mental exam — a screening tool that tests various aspects of memory — on Greener on July 17, 2007, that indicated that her recall was fair. English testified, however, that in the year and a half before the trial there had been several episodes when Greener did not remember anything about her previous visit to the office and did not remember undergoing diagnostic tests at the hospital that had included intravenous IV access and dye. English testified that when Greener left English’s office on one occasion, she had started out the door and could not remember how to go home. English stated that she is concerned for Greener’s safety because Greener’s memory is poor, and she believes that Greener needs a conservator. English thinks that Greener is capable of writing checks and paying bills with some supervision, but she believes that there should be safeguards in place for her, such as the requirement of a second signature on her checks; she
 
 *98
 
 thinks that Greener should not have unlimited access to her checkbook.
 

 In English’s report to the court, she suggested that Greener needed a guardian appointed and that it should be an independent party because she thinks that an objective third party is a better choice than a relative in order to protect the interests of both parties. English stated that it makes sense for a third party to take care of a person instead of a family member “when you’re dealing with dementia or depression and you’ve got the possibility for psychosis or delusions, accusations of theft, [and] accusations of abuse.”
 

 Dr. Sara Shashy, a medical doctor who is board certified in internal medicine and who has been engaged in the practice of neurology since 1995, testified by telephone over Greener’s objection. Dr. Shashy testified that she had treated Greener on three occasions — November 30, 2004, February 19, 2007, and March 29, 2007.
 
 [1]
 
 Dr. Shashy testified that she had drafted a letter, dated July 27, 2007, concerning Greener’s condition which explained that Greener had dementia, that Greener is not competent to manage her financial, medical, or personal affairs, and that it is not safe for Greener to operate an automobile.
 

 According to Dr. Shashy, a document in Greener’s file from Montgomery Metabolic and Memory Imaging, dated December 20, 2004, reflected that Greener was negative for Alzheimer’s dementia at that time. On Greener’s February 2007 visit, Dr. Shashy performed a mini-mental examination; Greener scored 29 out of 30, which results are considered normal. However, Dr. Shashy testified that Greener has a disease known as hypothyroidism, the signs and symptoms of which mimic Alzheimer’s disease, including memory loss, depression, lots of physical complaints, fatigue, lethargy, poor sleeping, and cold intolerance. Dr. Shashy testified that Greener does have memory loss and that, unlike Alzheimer’s disease, hypothyroidism is a curable or reversible disease. The treatment of hypothyroidism, according to Dr. Shashy, involves taking thyroid supplements, one pill each day, and allowing the physician to monitor the patient’s response and adjust the dose until it is normalized. Dr. Shashy stated that, if the patient does not take their medicine, their thyroid will continue to deteriorate and their symptoms will worsen.
 

 Although Dr. Shashy stated that she did not prescribe medication to Greener for her hypothyroidism, she testified that Greener’s medical doctors had prescribed it over the years and that Greener was “obviously not taking it because she’s quite deficient.” According to Dr. Shashy, when Greener first visited her office, she had been prescribed Aricept, a prescription medication used for treating Alzheimer’s disease, but Dr. Shashy stated that she did not believe that Greener had been taking it. According to Dr. Shashy, on Greener’s second visit with Dr. Shashy, Greener indicated that she had run out of her Aricept. Dr. Shashy testified that, according to her records, Greener was taking several other medications, including antidepressants and blood-pressure medicine. Dr. Shashy stated that she believed that Greener was incompetent based on the fact that Greener had not been taking her medication. When Dr. Shashy saw Greener in March 2007, she instructed Killough to give Greener the prescribed medication. Dr. Shashy explained, however, that Greener
 
 *99
 
 did not want her to tell Killough her diagnosis or otherwise talk to Killough.
 

 Killough explained that she knew that Greener had not been taking her medications before she began to administer them because Greener had had no energy and had been depressed. Killough testified that she had administered Greener’s medications for the two and a half months before trial and that she had noticed a lot of improvement in how Greener was feeling and how she looked.
 

 Greener testified that she did not take her medications in compliance with her doctor’s instructions because she wanted to stop taking all the medications that English had prescribed to her and she wanted to pursue herbal remedies, which she believes are better than prescription drugs. Greener stated that she is taking enough medication “to kill a mule.” Greener stated that part of the reason she wanted to return to Texas was to locate doctors who practice alternative medicine so that she could pursue natural cures and that she does not know of any such doctors in Alabama. Greener testified that she did not know what medications she was taking because, for several months, Killough had been administering them to her. She testified that when she does not take the medicine, she does not feel bad; she also stated that she does not know whether her memory is worse or not when she fails to take her medicine.
 

 Killough testified that it was not her intent to take Greener out of her home or to move her to a nursing home. Killough testified that Greener had always been very generous to her and her family and that they had no reason to steal her money. Killough testified that Greener did not trust her and that Greener had accused Killough of trying to poison her a few weeks before the trial.
 

 Greener testified that she is capable of managing her own affairs. Greener acknowledged that she has memory problems, but she stated that she does not believe that she has dementia. Greener stated that she does not want Killough to manage her affairs for her and that, if she was appointed a conservator by the court, she did not want Killough to be that conservator.
 

 Discussion
 

 Greener first argues that the probate judge exceeded his discretion by failing to recuse himself on the basis of his alleged close personal relationship with the Killough.
 

 “ ‘ “Under Canon 3(C)(1), Alabama Canons of Judicial Ethics, recusal is required when ‘facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.’ Specifically, the Canon 3(C) test is: ‘Would a person of ordinary prudence in the judge’s position knowing all the facts known to the judge find that there is a reasonable basis for questioning the judge’s impartiality?’ The question is not whether the judge was impartial in fact, but whether another person, knowing all the circumstances, might reasonably question the judge’s impartiality — whether there is an appearance of impropriety.” ’
 

 “City of Dothan Personnel Bd.,
 
 831 So.2d [1] at 5-6 [ (Ala.2002) ] (quoting
 
 Ex parte Duncan,
 
 638 So.2d 1332, 1334 (Ala.1994) (citations omitted)).
 

 “ ‘ “ ‘ “[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea.”’ Any dis
 
 *100
 
 qualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source.” ’
 

 “Ex parte Little,
 
 837 So.2d 822, 825 (Ala. 2002) (quoting
 
 Ex parte Melof,
 
 553 So.2d 554, 557 (Ala.1989)). “‘The burden of proof is on the party seeking recusal.” ’
 
 City of Dothan Personnel Bd.,
 
 831 So.2d at 9 (quoting
 
 Ex parte Cotton,
 
 638 So.2d [870] at 872 [ (Ala.1994) ]). ‘[A] mere accusation of bias that is unsupported by substantial fact does not require the disqualification of a judge.’
 
 Ex parte Melof,
 
 553 So.2d at 557 (emphasis omitted).”
 

 Ex parte Monsanto Co.,
 
 862 So.2d 595, 604-05 (Ala.2003) (footnotes omitted).
 

 Greener asserts in her brief on appeal that the probate judge and Killough “were friends and had been seen in each others company both at the home of [Kil-lough] and at social gatherings.” However, “we cannot consider evidence that is not contained in the record on appeal because this Court’s appellate review ‘ “is restricted to the evidence and arguments considered by the trial court.” ’ ”
 
 Roberts v. NASCO Equip. Co.,
 
 986 So.2d 379, 385 (Ala.2007) (quoting
 
 Ex parte Old Republic Sur. Co.,
 
 733 So.2d 881, 883 n. 1 (Ala.1999), quoting in turn
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992), and citing
 
 Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C.,
 
 580 So.2d 1326 (Ala.1991)). In her answer to Killough’s petition, Greener requested that the probate judge recuse himself “due to the close personal relationship between the Honorable Judge and the Petitioner and her husband,” but she did not attach an affidavit or present any other evidence supporting her alleged basis for recusal. Therefore, we cannot place the probate court in error for failing to grant the recusal request based on the reasons asserted in Greener’s brief.
 

 Greener next argues that the probate judge exhibited his bias in favor of Killough by violating Rule 103(c), Ala. R. Evid.,
 
 [2]
 
 in ruling on Greener’s evidentiary objections at trial. Greener maintains that the probate judge in several instances allowed the jury to hear objections and inadmissible evidence to which they should not have been privy. However, even assuming the truth of Greener’s assertion, Greener has failed to show how such erroneous rulings prove bias on the part of the probate judge and warrant his recusal. Furthermore, Greener failed to request the probate judge’s recusal based on his evi-dentiary rulings at trial. “[T]he appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling.”
 
 Ex parte Wiginton,
 
 743 So.2d 1071, 1073 (Ala.1999).
 

 Greener next argues that the probate court erred in allowing Dr. Shashy to testify by telephone. On appeal, Greener argues that Dr. Shash/s telephonic testimony should not have been permitted because that testimony was not the best evidence, because the jury could not observe Dr. Shashy’s demeanor while she was testifying, because Greener has difficulty hearing and “it [was] difficult for her to understand the testimony,” and because there was no way for the probate judge to know whether Dr. Shashy had her hand raised and was sworn in properly. A trial court’s determination whether to admit or
 
 *101
 
 exclude testimony will not be disturbed on appeal unless the trial court exceeded its discretion.
 
 See Key v. Ellis,
 
 973 So.2d 859, 368 (Ala.Civ.App.2007).
 

 Killough argues, citing
 
 Hardeman v. State,
 
 651 So.2d 59 (Ala.Crim.App.1994), that Greener is precluded from presenting this issue on appeal. In
 
 Hardeman,
 
 the defense counsel objected at trial, citing as grounds therefor that the question called for a mental operation; on appeal, the assignment of error regarding the same testimony was based on the rule prohibiting the impeachment of one’s own witness. The Court of Criminal Appeals determined that that issue was not preserved for appellate review because no objection had been made on that ground in the trial court.
 

 “Objections must be ‘raised at the point during trial when the offering of improper evidence is clear,’ see Charles W. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 426.01(3) (5th ed.1996).”
 
 HealthTrust, Inc. v. Cantrell,
 
 689 So.2d 822, 826 (Ala. 1997). This court will not hold a trial court in error “unless that court has been apprised of its alleged error and has been given the opportunity to act thereon.”
 
 Sea Calm Shipping Co. v. Cooks,
 
 565 So.2d 212, 216 (Ala.1990). At the trial in the present case, Greener’s attorney made the following objection before Dr. Shashy’s testimony was permitted by the probate court:
 

 “MR. CARTER: And also we object to Dr. Shashy testifying by telephone because it is not the best evidence. You have to testify when someone is in the office [sic] the jury cannot observe his demeanor and what’s he testifying and they’re not looking at the witness directly. The jury cannot view the witness and see what he is saying. Ms. Greener has a problem hearing and all so it’s going to be a difficult thing with [Dr. Shashy] testifying. We object strenuously to [Dr. Shashy] testifying by telephone.”
 

 We conclude that Greener preserved the issue of whether the probate court’s admission of Dr. Shashy’s testimony by telephone was in error based on those grounds proffered at trial.
 

 Greener’s objections based on the best-evidence rule are misguided because that rule, Rule 1002, Ala. R. Evid., regulates proving the content of a writing and has no application to the admissibility of a witness’s testimony by telephone. However, Greener continued at trial to assert a further basis for the objection grounded on Rule 43(a), Ala. R. Civ. P.,
 
 [3]
 
 which states, “[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules.”
 
 [4]
 
 Citing
 
 Harrison v. Wientjes,
 
 466 So.2d 125 (Ala.1985), Killough argues that “in open court,” as used in the rule, “refers to one’s opportunity and ability to cross-examine the witnesses against him” and “does not require that the witness actually be in the courtroom.” We disagree.
 

 In
 
 Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen,
 
 714 So.2d 293
 
 *102
 
 (Ala.1998), the Alabama Supreme Court discussed statutory construction as follows:
 

 " ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no
 
 room for
 
 judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
 

 714 So.2d at 296 (quoting
 
 IMED Corp. v. Systems Eng’g Assocs. Corp.,
 
 602 So.2d 344, 346 (Ala.1992)). The same principle applies in interpreting a rule of civil procedure.
 
 See Moffett v. Stevenson,
 
 909 So.2d 824, 826 (Ala.Civ.App.2005). “ ‘It is this Court’s responsibility to give effect to the legislative intent whenever that intent is manifested.’ ”
 
 Surtees v. VFJ Ventures, Inc.,
 
 [Ms. 2060478, February 8, 2008] — So.3d-,-(Ala.Civ.App.2008) (quoting
 
 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 517 (Ala. 2003)).
 

 Rule 43(a) states that witness testimony is to be taken
 
 “in
 
 open court.” “Open court” is defined by
 
 Black’s Law Dictionary
 
 1123 (8th ed.2004), as “[a] court that is in session, presided over by a judge, attended by the parties and their attorneys, and engaged in judicial business.” Furthermore, the Committee Comments on 1973 Adoption of Rule 43(a) state:
 

 “Rule 43(a) will make oral testimony before the court in an equity proceeding the rule, rather than the exception. This desirable change gives the trial court the obvious advantage of observing the demeanor of witnesses so as to determine more readily their veracity (or lack thereof) and the weight to be given their testimony.”
 

 The language of Rule 43(a) and the Committee Comments to that rule indicate that the presence of the witness in the courtroom is what is contemplated by the rule.
 

 Furthermore, in contrast to Alabama’s Rule 43(a), Fed.R.Civ.P., Rule 43(a), states:
 

 “At trial, the witnesses’ testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.”
 

 Alabama has not adopted that portion of the federal rule that allows contemporaneous transmission from a different location, and there are no cases in Alabama that indicate that testimony by telephone is permissible under Rule 43(a).
 

 Killough argues that whether to allow a witness to testify is a matter within the sound discretion of the trial judge. Killough cites
 
 Truck Rentals of Alabama, Inc. v. M.O. Carroll-Newton Co.,
 
 623 So.2d 1106, 1112 (Ala.1993), wherein the supreme court found that the trial court had not exceeded its discretion by allowing testimony from a witness whose name was not submitted on the list of proposed witnesses in compliance with a pretrial order. In the present case, however, we conclude that the probate court did exceed its discretion by admitting Dr. Shashy’s testimony by telephone.
 

 Because most states have adopted the federal version of Rule 43(a), there is little caselaw in other jurisdictions regarding whether testimony by telephone is permitted when there is not a provision in Rule 43(a) allowing contemporaneous transmission of testimony from a different location.
 
 But see, e.g., State ex rel. Juvenile Dep’t of
 
 
 *103
 

 Multnomah County v. Gates,
 
 86 Or.App. 631, 684, 740 P.2d 217, 218 (1987) (it was error for trial court to permit telephonic testimony when not permitted by a statute or procedural rule), and
 
 Kinsman v. Englander,
 
 140 Wash.App. 835, 843-44, 167 P.3d 622, 626 (2007) (a trial court
 
 may
 
 allow telephonic testimony with both parties’ consent because, in Washington, testimony shall be taken orally in open court “ ‘unless otherwise directed by the court’ ”). In
 
 Barry v. Lindner,
 
 119 Nev. 661, 81 P.3d 537, (2003), the Nevada Supreme Court adopted a standard allowing telephonic testimony in special circumstances, such as when exigent circumstances exist or when the parties consent and have knowledge of the witness’s identity and credentials.
 
 [5]
 
 119 Nev. at 668, 81 P.3d at 542.
 

 Several jurisdictions that
 
 have
 
 adopted a rule containing the contemporaneous-transmission clause of the federal rule have concluded that testimony by telephone should not necessarily be permitted in each case.
 
 See, e.g., Lawrence v. Delkamp,
 
 750 N.W.2d 452 (N.D.2008) (affirming trial court’s decision to disallow telephonic testimony because there were not adequate safeguards in place, including someone on site with the witness to administer the oath), and
 
 Dunsmore v. Dunsmore,
 
 173 P.3d 389 (Wyo.2007) (affirming trial court’s decision to rescind its order to allow telephonic testimony because it was in the court’s discretion).
 

 The record indicates that Greener was not informed before trial that Dr. Shashy would testify via telephone and that Greener did not consent to Dr. Shashy’s testifying via telephone. Furthermore, there was no reason given for Dr. Shashy’s inability to appear in court, it was stated only that she “could not come” to the court. Thus,
 
 had
 
 Alabama adopted that portion of the federal rule allowing contemporaneous transmission of testimony, Dr. Shashy’s testimony would not have been allowed because there were not appropriate safeguards in place and there were no special circumstances necessitating the employment of telephonic testimony.
 

 Nevertheless, based on the plain language of Rule 43(a), the probate court was not within its discretion to allow Dr. Shashy to testify by telephone.
 
 [6]
 
 The entire testimony of Dr. Shashy was inadmissible; thus, we conclude that the probate court committed reversible error in allowing Dr. Shashy’s testimony. We therefore reverse the probate court’s judgment and remand the case for a new trial consistent with this opinion.
 
 [7]
 

 REVERSED AND REMANDED.
 

 
 *104
 
 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
 

 PITTMAN, J., concurs in the result, without writing.
 

 [1]
 

 . Although the probate court appointed Dr. Caudill Miller to examine Greener, Dr. Shashy, who worked with Dr. Miller, performed examinations on Greener and prepared reports relating to those examinations.
 

 [2]
 

 . Rule 103(c), Ala. R. Evid., provides: "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."
 

 [3]
 

 . The Rules of Civil Procedure apply to probate-court proceedings “in the absence of express provision to the contrary." Ala.Code 1975, § 12-13-12.
 
 See also Hutchinson v. Miller
 
 962 So.2d 884, 886 n. 1 (Ala.Civ.App. 2007).
 

 [4]
 

 . We note that Rule 32(a)(3)(D), Ala. R. Civ. P., allows a party to introduce the deposition of a licensed physician. However, Killough did not attempt to introduce a deposition of Dr. Shashy pursuant to that rule. Also, Kil-lough has not argued that Rule 32(a)(3)(D) implies that testimony by a licensed physician is generally excepted from Rule 43(a). Therefore, we do not address that issue.
 

 [5]
 

 . In 2004, after
 
 Barry
 
 was released, the Nevada legislature adopted the federal version of Rule 43(a), adding the clause allowing contemporaneous transmission of testimony. At the time
 
 Barry
 
 was decided, the Nevada rule provided: " ‘In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules or by statute.' ”
 
 Barry,
 
 119 Nev. at 667-68, 81 P.3d at 541.
 

 [6]
 

 . Nothing in this opinion should be construed as preventing the parties from "taking testimony by agreement in a manner different from ... [the manner] provided [in Rule 43(a)] unless the court limits or prohibits such agreed manner.” Rule 43(a), Ala. R. Civ. P. (emphasis added). We merely hold that in the absence of an agreement of the parties to accept testimony by telephone, the trial court has no discretion to allow testimony by that means.
 

 [7]
 

 .Because we are reversing the judgment and remanding the case for a new trial, we need not address Greener's other evidentiary arguments or her argument that the probate court erred in granting Killough's petition.