THOMPSON, Presiding Judge.
Goodyear Tire & Rubber Company (“Goodyear”) appeals from a judgment requiring it to continue to pay for medical care being provided to Marvin J. Wilson to treat his lower-back pain. In the judgment, the trial court found that Wilson’s back pain is caused, at least in part, by a lumbar back strain Wilson suffered in 1986, while he was employed by Goodyear.
The record indicates the following. Wilson began working for Goodyear in 1965. In October 1986, he suffered an injury to his back while at work. In 1987, Wilson filed a claim for workers’ compensation benefits. That claim was eventually set- *672 tied. As part of the settlement, Goodyear agreed to pay for future medical treatment of the work-related injury.
When Wilson sustained his back injury, Goodyear sent him to Dr. Carville Woo-dall, who referred him to Dr. Cornelius Thomas, a rheumatologist, in December 1987. Dr. Thomas, who was Wilson’s authorized physician, testified by deposition that he has been treating Wilson for his back pain from time to time since 1987. On Wilson’s first visit to Dr. Thomas’s office, he was diagnosed with a lumbar strain, which was primarily a muscular issue, according to Dr. Thomas. At that time, Wilson also had mild arthritis and a small amount of degenerative lumbar spinal disease. Dr. Thomas said that the presence of the degenerative disease was noted in about half of people Wilson’s age, which, at the time, was 48. Dr. Thomas prescribed muscle relaxers and pain medication for Wilson and recommended a walking program for him. Wilson continued to see Dr. Thomas for treatment. In January 1988, Wilson reported to Dr. Thomas that he had begun walking regularly and that his back symptoms were improving. By March 1988, Dr. Thomas had allowed Wilson to return to work at Goodyear, but Wilson was restricted to lifting no more than 50 pounds. The weight restriction was raised to 75 pounds in 1990.
In July 1988, Wilson told Dr. Thomas that his job did not cause stress to his back; however, Wilson told Dr. Thompson that his back hurt him after he had spent a long time picking tomatoes. During the first Gulf War in 1991, Wilson, who was in the National Guard, was called to duty and stationed in Fort Hood, Texas. On Wilson’s return from Fort Hood, Dr. Thomas testified, he continued to see Wilson as a patient. Dr. Thomas’s office notes indicate that, in May 1993, he saw Wilson for “inflammatory changes,” but; Dr. Thomas said, those changes were not related to the lumbar strain.' The inflammation was primarily in Wilson’s ankle, toe, and knee joints. Dr. Thomas testified that, in late 1993 and early 1994, he diagnosed Wilson with seronegative rheumatoid arthritis, which is rheumatoid arthritis but which results in a negative blood test for the disorder. About one quarter of people suffering from rheumatoid arthritis are seronegative, Dr. Thomas said.
In 1994, Wilson retired from Goodyear.[1] Dr. Thomas said that being less active physically was easier on Wilson’s joints. Nonetheless, Wilson required arthroscopic knee surgery. In addition to the serone-gative rheumatoid arthritis, Dr. Thomas said, Wilson also had polyarthritis at that time. Dr. Thomas prescribed Naproxen and Flexeril for Wilson. He said that the Flexeril was for Wilson’s back pain, and the Naproxen did “double duty” for the rheumatoid arthritis in his joints as well as for back pain.
From September 1995 until mid-March 2003, Wilson worked as a truck driver for a Gadsden automobile dealership. In that job, Wilson worked 40 hours a week, making pick ups and deliveries of vehicles to Atlanta, Little Rock, and Chicago. Wilson also worked as a tour-bus driver for a company based in Birmingham and as a driver for “dial-a-ride.” Dr. Thomas said that people can have flare-ups of back issues when they drive for long periods.
Dr. Thomas’s notes reflect that he did not see Wilson from September 1998 until July 2003. The office notes from August 12, 2003, assessed Wilson with “degenerative lumbar spine disease with prior strain.” Dr. Thomas testified that he *673 worded the assessment in that manner because he thought, “at that time, that the degenerative component was taking over as the predominant factor” as the cause of the discomfort in Wilson’s lumbar spine. X-rays taken of Wilson’s back in 2004 indicate that the degenerative lumbar disease had grown worse since Dr. Thomas began seeing him in 1987. In addition, Dr. Thomas prescribed Lortab for Wilson to use for either his arthritis or the degenerative-back-pain issues, “whatever was bothering him more at the time.”
In June 2007, Dr. Thomas noted in his assessment of Wilson that he was experiencing “mechanical back pain.” Dr. Thomas explained, “There’s a kind of arthritis in which people get inflammation of the back called ankylosing spondylitis in which one gets inflammation of the back, and mechanical refers to the other group of conditions, which would include trauma, or sprain, or degenerative arthritis.” Dr. Thomas’s note of August 2, 2010, indicates that Wilson had osteoarthritis in his lumbar spine. Dr. Thomas testified that osteoarthritis was degenerative arthritis that develops over time.
On July 18, 2011, in Dr. Thomas’s last assessment of Wilson before his deposition, he said that Wilson was experiencing worsening pain from degenerative arthritis. When Dr. Thomas was asked whether, on July 26, 2011, the day of Dr. Thomas’s deposition, Wilson’s complaints of back pain were originating not from the lumbar strain that occurred in 1986 but from the degenerative arthritis in the lumbar spine, Dr. Thomas said, “That seems likely.”
On cross-examination, the following discussion took place between Wilson’s attorney and Dr. Thomas.
“Q. [By Wilson’s attorney]: Would it be fair that it is more probable than not, that means just basically if you’ve got the scales of justice, it tilts only a little bit, but that given the chronic nature of the problems associated with the strain that we saw throughout the decade — the remaining decade of the ’80s, the entire decade of the ’90s, and the symptom complex as it continues today, that the lumbar strain that manifested itself for a period of over a decade continues to play, at least to some degree, a role in the symptoms that are confronting Mr. Wilson today?
[[Image here]]
“A. [By Dr. Thomas]: That’s hard to answer. It’s been a long time. I would think most of his symptoms now are from degenerative arthritis.
“Q.: I understand that. Would it be fair — in your reasonable judgment, would it be fair to say that the lumbar strain is at least a contributing factor to some degree, although it may not be certainly the predominant factor, is a contributing factor to his ongoing and continuing symptoms as they have existed over the last 20 years?
[[Image here]]
“A.: It’s hard to say it’s not contributing to some extent, but as I said, the predominant contributor would be degenerative arthritis.
“Q.: The predominate contributor would be the degenerative arthritis, but certainly would it be fair to say that a component of contributions is more likely — given what we know about Mr. Wilson and given your documentation, a component continues to be the lumbar strain?
[[Image here]]
“A.: It’s just — again, I say it’s hard to say. It sounds like most of it is degenerative arthritis. Whether there’s one percent or five percent or zero percent strain is hard to say.
“Q.: Would it be reasonable to expect that there is something more than zero *674 percent that’s participating or contributing?
[[Image here]]
“A.: I can’t answer that.”
When Wilson’s attorney continued to press Dr. Thomas about whether it was possible that the lumbar strain Wilson experienced in 1986 could have contributed to the degenerative arthritis, Dr. Thomas said it was “possible,” but he would not “go beyond possible.” He did state, however, that the seronegative polyarthritis, or rheumatoid arthritis, that Wilson had in his joints was not playing a role in Wilson’s back pain.
Wilson testified that he has back pain every day and that when he was not being seen by Dr. Thomas, he was being seen by another doctor for back pain. Goodyear paid for Wilson’s treatment until January 2009. In 2009, Goodyear closed its medical clinic, where Wilson received his medication. When the clinic closed, Wilson was told he had to contact “Progressive Medical” to obtain a “number” to have his prescriptions filled. Wilson said that Progressive Medical referred him to Liberty Mutual, who told him to call Progressive Medical. Wilson said that, after January 2009, he was never able to receive authorization from Goodyear for his medications.
In its judgment, the trial court found that Wilson’s 1986 lumbar strain “does continue to contribute to the symptom complex requiring interventional care that has historically been accepted by Goodyear and provided by Dr. ... Thomas.” Specifically, the trial court found that, although the lumbar strain was not the sole cause of Wilson’s back pain, it was a contributing cause. Accordingly, the trial court ordered Goodyear to continue to pay for the care and medications Wilson needed to treat his ongoing back pain. Goodyear filed a postjudgment motion, which the trial court denied. Goodyear timely appealed.
In their briefs on appeal, the parties disagree as to who bears the burden of proving that Thomas is entitled to have Goodyear pay for his continued treatment. Goodyear argues that, because Wilson is seeking medical benefits for a condition that he says was caused by a work-related injury, Wilson bears the burden of establishing that his current back pain is related to the 1986 injury. On the other hand, Wilson argues that, because Goodyear accepted the responsibility of paying for the care and medications necessary for the treatment of his back injury, it now bears the burden of proving that it no longer has to continue to pay for Wilson’s medical treatment.
The record indicates that, at the beginning of the trial in this case, Wilson’s attorney asserted that Goodyear bore the burden of proof in this case. The trial court then asked Goodyear’s attorney whether there was “a position you would like to state before we start in regards to the burden associated with this.” Goodyear’s attorney responded with a statement regarding which party would call a certain witness. That witness was then called and the trial went forward without Goodyear making a statement about which party bore the burden of proof. In the trial court’s judgment, it stated that Goodyear had the burden of proof in this case; in fact, it stated twice that Goodyear bore the burden of proof. In Goodyear’s post-judgment motion, however, Goodyear failed to assert that the trial court had improperly shifted the burden of proof to it. Further, at the hearing on the post-judgment motion, Wilson’s attorney again argued that Goodyear bore the burden of proof, adding, “And I think that that frankly at the end of the day may have tipped the scale in this case.” Wilson’s attorney closed by saying he did not think that Goodyear had sustained its burden. The trial court then asked to go off the *675 record, and the trial was ended without anything further being put on the record. Based on the record before us, we conclude that, during the trial of this case, the parties proceeded as though Goodyear bore the burden of proof and that Goodyear never made an assertion to the contrary to the trial court.
“This court will not hold a trial court in error ‘unless that court has been apprised of its alleged error and has been given the opportunity to act thereon.’ Sea Calm Shipping Co. v. Cooks, 565 So.2d 212, 216 (Ala.1990).” Greener v. Killough, 1 So.3d 93, 101 (Ala.Civ.App.2008). Because Goodyear never argued to the trial court that Wilson bore the burden of proof in this case, we must analyze the evidence using the burden of proof used by the trial court.
Ordinarily, an employee must prove, by a preponderance of the evidence, that the complaint for which he or she seeks medical treatment arose out of and in the course of his or her employment. Because Goodyear failed to argue otherwise, however, the parties tried this case in a manner that required Goodyear to prove, by a preponderance of the evidence, that the complaints for which Wilson was seeking treatment from Dr. Thomas were not caused by the 1986 lumbar strain he suffered during his employment with Goodyear. Therefore, our task is to determine whether the trial court’s determination that Wilson’s current complaints of back pain “continue[d] to be related” to the 1986 injury for which Goodyear had accepted responsibility is supported by substantial evidence, as required by § 25-5-81 (e), Ala. Code 1975.
Section 25-5-81(e), Ala.Code 1975, provides the standard by which this court reviews appeals in cases arising under the Act. That section provides:
“(e) Review. From an order or judgment, any aggrieved party may, within 42 days thereafter, appeal to the Court of Civil Appeals and review shall be as in cases reviewed as follows:
“(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.”
Discussing this standard, this court wrote in Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279 (Ala.Civ.App.2005):
“When this court reviews a trial court’s factual findings in a workers’ compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81 (e)(2), Ala.Code 1975. Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, this court reviews the facts ‘in the light most favorable to the findings of the trial court.’ Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala. Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). This court has also concluded: ‘The [1992 Workers’ Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.’ Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (AIa.Civ.App.1995). However, our review as to purely legal issues is without a presumption of correctness. See Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App.2002) (citing § 25-5-81(e)(l), Ala.Code 1975).”
In its judgment, the trial court found that Wilson’s degenerative arthritis in the *676 lumbar spine “clearly plays a role in [Wilson’s] symptom complex.” The trial court stated:
“However, as Dr. Thomas candidly acknowledges in his deposition, it would be difficult to completely rule out the work-related injury and the lumbar spine as contributing in some measure to the condition giving rise to [Wilson’s] symptoms. This concession by Dr. Thomas is significant given the burden that rests with Goodyear in this case. In fact, when presented with an overview of the facts of this case, the doctor admitted that it was reasonable to assume that some of Wilson’s symptoms continue to be related to the accepted injury.”
(Emphasis added.)
The evidence in this case indicates that Dr. Thomas was reluctant to attribute a portion of Wilson’s current back pain to the 1986 lumbar strain. When asked whether it would “be reasonable to expect that there is something more than zero percent that’s participating or contributing” to Wilson’s back pain, Dr. Thomas said, “I can’t answer that.” Dr. Thomas also stated that he believed it “likely” that Wilson’s complaints of back pain originated, not from the 1986 lumbar strain, but from the degenerative arthritis. When asked whether it was reasonable to assume that some of Wilson’s back complaints were related to the 1986 injury, Dr. Thomas stated, “[A]gain, I say it’s hard to say. It sounds like most of it is degenerative arthritis. Whether there’s one percent or five percent or zero percent strain is hard to say.” We conclude that Dr. Thomas’s equivocal response provides evidence only of a mere possibility that Wilson’s current back pain relates to the 1986 injury. From the record before us, a determination that Wilson’s 25-year-old back strain is a contributing factor to his current back complaints would be based on Dr. Thomas’s speculation that, although those complaints may be based on the 1986 strain, it is far more likely that they are the result of Wilson’s degenerative arthritis. We agree with Goodyear that the trial court’s finding that the 1986 lumbar strain is the cause of Wilson’s current back condition for which Dr. Thomas is treating him is not supported by substantial evidence. Accordingly, we conclude that the trial court’s judgment improperly requires Goodyear to continue to pay for the care and medication Wilson is receiving from Dr. Thomas and to reimburse Wilson for the out-of-pocket expenses at issue, which total $146.70.
For the reasons set forth above, we reverse the trial court’s judgment and remand the cause to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., dissents, with writing, which BRYAN, J., joins.

. After retiring from Goodyear, Wilson was treated for neck pain and he had a knee replacement, in addition to receiving continued treatment for his back pain.