DONALDSON, Judge.
L.M. (“the mother”) appeals from a judgment of the Talladega Juvenile Court (“the trial court”), entered in three separate actions, terminating her parental rights to C.M. (case no. JU-12-150.02), M.M. (case no. JU-12-152.02), and T.M. (case no. 12-153.02) following a trial and a separate judgment entered by the trial court placing legal custody of W.M. with D.S., a paternal aunt (case no. JU-12-151.03). C.M., M.M., T.M., and W.M. are hereinafter referred to collectively as “the children.”
The Talladega County Department of Human Resources (“DHR”) first became involved with the mother and children in July 2012 because the mother and W.M., Jr. (“the father”), were both incarcerated. DHR social worker Tiffany Twymon, a witness at the trial, testified that the children had been left with the mother’s sister, who had six children of her own and was not able to care for the mother’s children as well. Twymon testified that, when the children came into DHR custody on July 18, 2012, W.M. was “extremely malnourished” and the other children all had “a severe case of head lice.” Twymon also testified that, when the mother was released from jail, she offered the mother rehabilitative services and visitation but that the mother moved to Tennessee in October 2012 without notifying DHR. Twymon further testified that the mother had four older children with another father, that the mother’s parental rights to the oldest of those children had been terminated, and that the other three older children are in the custody of their father in Ohio. During the pendency of these cases, the mother gave birth to another child, who was in the custody of the mother’s sister at the time of the trial.
On July 16, 2013, DHR filed petitions seeking to terminate the mother’s and the father’s parental rights to C.M., M.M., and T.M. W.M., Sr., and S.M., the paternal grandparents of the children, filed dependency petitions seeking custody of the children. D.P. and B.P., former foster parents of the father, also filed dependency petitions seeking custody of the children. D.S., a paternal aunt of the children, filed a dependency petition seeking custody of W.M. On May 19, 2014, the trial court held a hearing at which it received testimony and documentary evidence on the dependency petitions and DHR’s termination petitions. At the time of trial, C.M. was five years old, M.M. was four years old, T.M. was three years old, and W.M. was two years old. All the children had been in DHR’s custody since July 18, 2012, but, DHR had placed W.M. in the care of D.S. approximately 11 months before the trial.
At trial, Twymon testified that, since the children had been in DHR’s custody, the mother had visited with them 8 times in 22 months. Twymon stated that seven of those visits had occurred on or before October 2, 2012, that the mother had not visited the children between October 2, 2012, and her eighth visit in November 2013, and that the mother had not visited *1083 the children since November 2013. Twymon testified that the mother had not stayed in contact with DHR. Twymon also testified that she had investigated every individual identified by the mother as a potential placement resource and that none of those individuals was suitable to assume custody of the children.
On May 23, 2014, the trial court entered a judgment terminating both parents’ parental rights to C.M., M.M., and T.M., and it entered a separate judgment placing W.M. in the custody of D.S. In the judgment terminating the parents’ parental rights to C.M., M.M., and T.M. (“the termination judgment”), the trial court found that the mother was
“currently residing in a hotel in the State of Tennessee. Since the birth of the children, the mother has resided in New York, South Dakota, Ohio, Alabama, Tennessee and California. She has four older children that reside in Ohio. Her parental rights were terminated with respect to the oldest child and she does not have custody of the other three children. The mother left the State of Alabama in October of 2012 and has not seen her children but one time in November 2013.”
Moreover, in the termination judgment, the trial court found that DHR had offered the mother services directed toward reunification but that the mother had failed to take advantage of those services; that reasonable efforts at rehabilitation made by DHR had failed; that the mother was unable or unwilling to discharge her responsibilities to and for the children; that the conduct and conditions of the mother were such as to render her unable to properly care for C.M., M.M., and T.M.; and that such conduct and conditions were unlikely to change in the foreseeable future. The trial court also determined, in the termination judgment, that there were no placement resources suitable to have custody of C.M., M.M., and T.M. and that there were no viable alternatives to termination of the parents’ parental rights as to those children. In the judgment placing W.M. in the custody of D.S. (“the dependency judgment”), the trial court, in addition to placing custody of W.M. with D.S., found that DHR had “made reasonable efforts to finalize the permanency goal of relative placement” as to W.M. The trial court denied the dependency petitions filed by W.M., Sr., and S.M. and by D.P. and B.P., and none of those parties appealed.
The mother filed postjudgment motions in each case on June 5, 2014, seeking to vacate the termination judgment and to modify the dependency judgment to award her visitation with W.M. Those motions were denied by operation of law on June 19, 2014. On June 19, 2014, the mother filed a timely notice of appeal in each case. The appeals have been consolidated by this court ex mero motu. The father has not appealed.
Although the appeals have been consolidated for appeal, the mother has submitted two appellate briefs. In her brief addressing the termination judgment (appeal nos. 2130782, 2130784, and 2130785), the mother argues that DHR failed to prove that there was no viable alternative to termination of the mother’s parental rights to C.M., M.M., and T.M. and that the trial court erred in excluding W.M., Sr., and S.M. and D.P. and B.P. as potential placement resources, before DHR had completed home studies of those individuals, in order to comply with the time requirements of § 12-15-320(a), Ala.Code 1975, which requires that “(t]he trial on the petition for termination of parental rights shall be completed within 90 days after service of process has been perfected.” In her brief addressing the dependency judgment (appeal no. 2130783), the mother argues *1084 that the trial court erred by not awarding her visitation with W.M. The mother also argues that the trial court erred by allowing D.S. to testify via telephone.
The mother first argues in her brief addressing the termination judgment that DHR failed to prove that there was no viable alternative to termination of the mother’s parental rights to C.M., M.M., and T.M. The mother asserts that DHR failed to satisfy the second prong of the two-prong test announced in Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990):
“First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in [§ 12-15-319, Ala.Code 1975]. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered.”[1]
Section 12-15-319, Ala.Code 1975, provides, in pertinent part:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling-to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unáble or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
“(1) That the parents have abandoned the child, provided that in these cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
[[Image here]]
“(7) That reasonable efforts by the Department' of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
[[Image here]]
“(12) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, in-eluding agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
The mother argues that DHR was aware of two potential placement resources for C.M., M.M., and T.M. and that investigations of those potential placement resources was .ongoing at the time of trial. The mother does not specifically identify those potential placement resources in the argument section of her brief; however, in the mother’s statement of the facts, it appears that she is referring to D.P. and.B.P. and to W.M., Sr., and S.M.
D.P. and B.P. are residents of New York and served as. foster parents for the father. D.P. and B.P. are not related to C.M., M.M., and T.M., have never met T.M., the *1085 youngest of the three, and have not seen C.M. and M.M. since 2010. At trial, D.P. testified that she did not “have any problem with [C.M., M.M., and T.M.] staying where they’re at” with their current foster parents, and she agreed that she would not want to displace C.M., M.M., and T.M. from the home where they had lived for two years.
At the time of trial, S.M. was 71 years old and W.M., Sr., was 79. W.M., Sr., and S.M. had adopted the father when he was 14 years old; At trial, S.M. admitted that she and W.M., .Sr., had been convicted in Ohio of a misdemeanor criminal charge based on their failure to support the father while he was ⅛ their care.' A copy of the Ohio judgment was admitted into evidence. S.M. further admitted that she had been charged with felony child abuse in Florida in 2014. The trial court admitted into evidence a copy of a notice filed in the Florida child-abuse case in which an attorney for the State of Florida stated that the case was not being prosecuted because the alleged victim was uncooperative, unavailable, and in the custody of S.M., who had left the jurisdiction.
The mother argues- that “[t]his court has previously held- that where [DHR] is made aware of a potential relative placement, terminating parental- rights is premature prior to the completion of the [Interstate Compact on the Placement of Children] process,” and she cites A.M. v. St. Clair County Department of Human Resources, 146 So.3d 425 (Ala.Civ.App.2013), in support of that proposition.[2] However, in that case, this court actually stated:
“We note that DHR waited four months after learning of the paternal grandmother’s interest before submitting its request to the State of Michigan pursuant to the [Interstate Compact on the.. Placement of Children] regarding the paternal grandmother. Had the request been , made in a more timely fashion, the results may have been available at the time of the termination- hearing.”
146 So.3d at 436. The mother admits that “[t]he record does not, speak as to when these resources were located.” Further, the mother does not argue that the results of - home studies regarding the potential placement resources woujd have changed the outcome .of the cases. involving C.M., M.M., and T.M. The trial, court heard evidence from which it could have been clearly convinced that neither D.P. and B.P. nor W.M., Sr., and S.M. were suitable placement .resources sufficient to serve as an alternative to the termination of the mother’s parental rights to C.M., M.M., and T.M.
“Although a juvenile court is required to consider alternatives to termination under Ex parte Beasley, 564 So.2d [950] at 954 [ (Ala.1990) ], .the juvenile court is not required to accept any suggested alternative as ‘viable’ simply because it exists.... The determination of whether a viable alternative to termination exists in a given case is. a: question of fact. T.V. v. B.S., 7 So.3d 346, 352 (Ala.Civ.App.[2008] ) (citing J.B. [v. Cleburne Cnty. Dep’t of Human Res.], 991 So.2d [273] at 282 [ (Ala.Civ.App.2008) ]). Our review of a juvenile court’s decision on the viability of a particular alternative is governed by the ore tenus rule. T.V., 7 So.3d at 353.”
*1086 J.A. v. Etowah Cnty. Dep’t of Human Res., 12 So.3d 1245, 1254 (Ala.Civ.App.2009).
The mother further argues that the trial court erred in excluding D.P. and B.P. and W.M., Sr., and S.M. as potential placement resources before DHR completed home studies in order to stay within the time requirements of § 12-15-320(a), which provides, in pertinent part: “Termination of parental rights cases shall be given priority over other cases. The trial on the petition for termination of parental rights shall be completed within 90 days after service of process has been perfected.” As in her first argument, the mother states “that the two potential resources could not be considered- because their [Interstate Compact on the Placement of Children] home study had not been completed” before the expiration of the 90-day period allotted for conducting the trial. Therefore, the mother argues, the trial court erred by excluding D.P. and B.P. and W.M., Sr., and S.M. as
“potential relative resources without allowing DHR to complete the [Interstate Compact on the Placement of Children] home studies because of the court’s desire to meet the statutory time requirement set forth in § 12-15-320 [and thus] caused the mother to have her rights to association with [C.M., M.M., and T.M.] substantially impaired and [that such action] was a plain and palpable abuse of discretion by the trial court.”
The mother cites no authority that would place the trial court in error on the basis cited. As noted, the trial court heard testimony from the potential placement resources, and even without the home studies, the trial court could have been clearly convinced, based on that testimony, that neither D.P. and B.P. nor W.M., Sr., and S.M. were suitable placement resources sufficient to serve as an alternative to the termination of the mother’s parental rights. No reversible error has been established on this issue.
In her brief addressing the dependency judgments, the mother argues that the trial court erred by allowing D.S. to testify via telephone over her objection. At the beginning of the proceedings on May 19, 2014, the trial court stated: “I’m going to run through the [dependency petitions] today, and then after I get finished with the [dependency petitions], then I’m going to run through the [petitions to terminate parental rights].” Before D.S. was called as the first witness, the trial court stated: “It’s my understanding [D.S.] is not here and is going to testify by phone; is that correct?” Counsel for the mother and counsel for the father both objected to D.S.’s being allowed to testify by telephone, relying upon Rule 43(a), Ala. R. Civ. P., which provides, in pertinent part: “In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules.” The trial court stated that, in a previous hearing,
“[t]he parties were here. I remember the parties being here. I said [that D.S. would be permitted to testify via telephone] in open court and no one objected. I’m not saying that by me saying it in open court it’s everybody agreeing to it, but object in that minute in trial that day, they did not object when they were in open court.”
However, counsel for one of the parents[3] stated: “Judge, I wasn’t even appointed I *1087 don’t believe at that point, so I don’t know what was said. I’m not disputing that it was said. Either I wasn’t there ór I missed it.” The trial court overruled the objections and allowed D.S. to testify by telephone. D.S. testified regarding W.M.’s improved physical development during the 11 months she had been in D.S.’s care. D.S. testified that, during that time, the mother never contacted her, never requested to visit W.M., and never offered support for the care of W.M.
This court has stated:
“Rule 48(a) states that witness testimony is to be taken ‘in open court.’ ‘Open court’ is defined by Black’s Law Dictionary 1123 (8th ed.2004), as ‘[a] court that is in session, presided over by a judge, attended by the parties and their attorneys, and engaged in judicial business.’ Furthermore, the Committee Comments on 1973 Adoption of Rule 43(a) state:
“ ‘Rule 43(a) will make oral testimony before the court in an equity proceeding the rule, rather than the exception. This desirable change gives the trial court the obvious advantage of observing the demeanor of witnesses so as to determine more readily their veracity (or lack thereof) and the weight to be given their testimony.’
“The language of Rule 43(a) and the Committee Comments to that rule indicate that the presence of the witness in the courtroom is what is contemplated by the rule.”
Greener v. Killough, 1 So.3d 93, 102 (Ala.Civ.App.2008). In Greener, this court held that “based on the plain language of Rule 43(a), the ... court was not within its discretion to allow [the witness] to testify by telephone,” and, on that basis, this court reversed that trial court’s judgment and remanded the case for a new trial. 1 So.3d at 103. Similarly in this case, the record does not establish that the parties dr their counsel had previously stipulated to testimony being presented by telephone. Therefore, pursuant to Rule 43(a) and our holding in Greener, D.S.’s testimony could not be. taken by telephone over the parents’ objection.
For the reasons discussed in this opinion, the termination judgment is affirmed. However, the dependency judgment is reversed, and the case is remanded for a new trial.[4] ^
2130782, 2130784, and 2130785 — AFFIRMED.
2130783 — REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur-.
THOMAS, J., concurs in the result, without writing.

. The mother does not argue that DHR failed to meet the first prong of Beasley, i.e., that DHR failed to present clear and convincing evidence demonstrating that there were grounds for the termination of the mother’s parental rights. Therefore, that issue is waived. "When an appellant fails to argue an issue in its brief, that issue is waived.’’ Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982).

. The Interstate Compact on the Placement of Children is a uniform compact enacted by multiple states and is codified in Alabama at § 44-2-20 et seq., Ala.Code 1975. Article I of the Compact provides: "It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children. ...”§ 44-2-20.

. The transcript from the trial indicates that this portion of the objection was made by “UNIDENTIFIED SPEAKER.” Counsel for the mother and counsel for the father both participated in the discussion regarding this objection. It is not clear from the record which counsel made this statement.

. Because we are reversing the dependency judgment and remanding the case for a new trial, we need not address the mother's remaining argument that the trial court erred in not granting her visitation with W.M.